SIDNEY ALLEN ET AL. *v.* STATE OF MARYLAND

[No. 21, April Term, 1940.]

270

*Decided May 22, 1940.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Ben B. Sellman,* with whom were *Howard. L. Aaron* and *Samuel S. Levin* on the brief, for the appellants.

*William C. Walsh, Attorney General, Robert E. Clapp, Assistant Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *Douglas N. Sharretts, Assistant State's Attorney,* submitting on brief, for the State.

PARKE, J., delivered the opinion of the Court.

There are two appeals on this record from two judgments of the Criminal Court of Baltimore City entered upon verdicts of guilty, under one indictment for taking bets on horse races, and under another for conducting a lottery. There were five traversers indicted. One of the five was acquitted of taking bets on horse races, and the other four were convicted of this crime. Three of the five were acquitted of conducting a lottery and two were convicted. The two convicted under each indictment have appealed. The trials were had together before the court, sitting as a jury, and the errors assigned are common to both proceedings. The State and the traversers have agreed that both appeals shall be brought up by one record, as the difference in the crimes charged makes no distinction in the rulings.

After the indictments and before pleading, the traversers filed in each case a motion to quash a search warrant which had been issued and executed, and to have returned to the traversers "all papers, documents, memorandums, books and other property seized" by police officers pursuant to the terms of the search warrant. The motion having come on for hearing, the State offered certain testimony and closed, whereupon the court stated that he considered it best for a ruling on the motion to be deferred, and the cases proceed to trial. The traversers were then arraigned, and entered pleas of not guilty and elected to be tried by the court. The

traversers gave testimony on their part on the motion to quash the writ and to exclude the physical testimony seized, and the court refused to grant the motion. To this action of the court and its rulings on the admissibility of certain testimony the traversers excepted, and the questions raised are presented by nine bills of exceptions. As the propriety of the rulings of the court on the last eight bills of exceptions depends on the validity of the search warrant, the decision on that point will determine the appeal. So, there is no occasion to consider any other than the first bill of exceptions. Code (1935 Supp.) art. 35, sec. 4A; *Gorman v. State,* 161 Md. 700, 158 A. 903; *Sugarman v. State,* 173 Md. 52, 53, 195 A. 324.

The search warrant was issued under the provisions of section 259A of article 27 of the Code, as enacted by chapter 749 of the Acts of 1939. The Act authorizes any judge of the Supreme Bench of Baltimore City, or any judge of the Circuit Court in the counties of the state, or any justice of the peace in the state, to whom it may be made to appear by a writing signed and sworn to by the applicant that there is probable cause, the basis of which shall be set forth in the writing, to believe that any misdemeanor or felony is being committed by any individual, or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge or justice of the peace, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then such judge or justice of the peace may forthwith issue a search warrant directed to any duly constituted policeman, constable or police officer, authorizing him to search such suspected individual building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be

searched, the grounds for such search and the name of the applicant on whose written application as aforesaid the warrant was issued. Section 259A, p. 1607.

The Act declares that the statute with reference to perjury and the subornation of perjury (section 449-452 of article 27) shall apply to all persons who make oath or affirmation, or procure the same, under the Act. Section 259B, p. 1607.

The statute further enacts that if, at any time, on application to a judge of the Circuit Court of any county or of the Criminal Court of Baltimore City, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for the existence of the grounds on which the warrant was issued, said judge must cause such property to be restored to the person from whom it was taken; but if it appears that the property taken is the same as that described in the warrant and that there was probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the property retained in the custody of the person seizing it or to be otherwise disposed of according to law. Section 259A, p. 1607.

It will be observed that the Act prescribes: (first) the fulfillment of certain requisites before the designated official may find there is probable cause to believe that a misdemeanor or felony is being committed (a) by any individual or (b) in any building, apartment, premises, place or thing within his territorial jurisdiction, or (c) that any property subject to seizure under the criminal laws of the state is situated or located in or on any such building, apartment, premises, place or thing; and (second) the content of search warrant in that it shall name or describe, with reasonable certainty, the individual, building, apartment, premise, place or thing to be searched, the grounds for such search, and the name of the applicant on whose written application the writ was issued; and (third) an application to determine whether the property taken should be retained, if it should ap-

pear that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued or should be restored if either or both of these two conditions should not appear to exist.

The search warrant is said to be invalid on several grounds. The first is that the warrant does not set forth that it was issued upon a writing signed and sworn to by the applicant. The recital is that: "it appears to me, the subscriber, an Associate Judge of the Supreme Bench of Baltimore City, in and for the City aforesaid, by the information and oath of Sergeant Ralph Amrein of the City aforesaid, that there is probable cause to believe that a misdemeanor" is being committed in certain premises.

The contention of the traversers is unfounded. There is no requirement made by the Act that it should affirmatively appear in specific terms in the writ that the application submitted was in writing and signed and sworn to by the applicant. The contrary is inferable from the fact that the form and sufficiency of the written application is, primarily, for the official to whom it is addressed; and, when that official determines that the writ should issue, the statute specifies what it shall set forth. If these requirements are met, more are not imposed. Among these prescribed statements is "the name of the applicant on whose written application as aforesaid the warrant was issued." This provision was complied with when the writ affirms that it is issued on the probable cause shown "by the information and oath of Sergeant Ralph Amrein of the City aforesaid."

Indeed, as a matter of long established practice, the phrase "information and oath" is the customary term in the writ of search and seizure, as issued in Maryland, to express the basic procedure upon which the writ is granted. The usage is indicated by ancient precedent, and the technical meaning of "information and oath" is the written statement of fact by the informer over his signature, and verified by his oath. Thus in *Latrobe's*

*Justice*, section 1755, the form is that it appears "by the information and oath of Israel Informer"; and, at section 1409, in speaking, generally, of the information upon which warrants for crime issue, the author says: "This paper is then read to the parties who have given evidence, and if they adhere to the statement, they confirm it by their signature, upon this the justice usually issues his warrant or summons, according to the magnitude of the charge or the apparent weight of the evidence by which it is supported." *Thomas' Procedure in Justice's Cases*, sec. 460, p. 388; *Goodman v. State*, 178 Md. 1, 11 A. 2nd 635; 16 *Ency. of Forms of Pleading and Practice*, Form No. 18318, p. 974; 1 *Chitty's Crim. Law*, 31; *Sandford v. Nichols*, 13 Mass. 286, 289; *Comm. v. Dana*, 2 Metc. (Mass.) 329, 330.

The second objection to the validity of the warrant is that the facts set forth in the warrant as the grounds for its issuance appear from the warrant not to be facts within the personal knowledge of the applicant, but facts verified by his oath on information and belief. Nevertheless, the facts, together with the responsible official source from which the facts were derived, were set forth in the warrant as the basis of the belief of the affiant, and this is all that is necessary, if such facts are sufficient to constitute probable cause. *Cornelius on Search and Seizure*, (2nd Ed.), sec. 165 (85).

It is objected as a third reason that the facts so stated would not, under the circumstances, be adequate to justify a man of prudence and caution in believing that the places sought to be searched contained property of the character for which a search and seizure under a warrant could lawfully be made because of its use in a misdemeanor, if the charge made by the applicant is true. *Carroll v. United States*, 267 U. S. 132, 161, 45 S. Ct. 280, 69 L. Ed. 543; *Steele v. United States*, 267 U. S. 498, 504, 45 S. Ct. 414, 69 L. Ed., 757.

The court does not agree with this contention of the traversers. Nor does it agree with the further and fourth objection that the warrant is a general one in

respect of the place of search. Both of these points may be considered together, as a separate discussion would involve a repetition of some of the facts.

The premises are effectually described as Nos. 1308 and 1310 East Monument Street, in Baltimore City. While each number represented a building separately constructed and occupied by different persons, and there was no common entrance, nevertheless the two ostensibly distinct premises were united by a common unlawful use in the opinion of the police officers, and this conclusion is justified by the facts set out in the warrant.

An extended experience with the devices and shifts employed in the various forms of unlawful gambling in Baltimore City on the races of horses, together with their duty of enforcement of the criminal statutes, give the police officers a special knowledge which enables them to perceive and recognize the testimonial *indicia* of unlawful gambling. To be successful the crime must be covertly committed, be patronized, and the gambling and the gamblers protected against detection. The outside precautionary measures described by the warrant were clear indications of wrong-doing inside.

The first floor of 1308 East Monument Street was occupied as a place to rent and repair bicycles, and the two upper floors were later found to be occupied by negroes, while a Chinese restaurant was conducted on the first floor of 1310 East Monument Street. It afterwards developed that the proprietor of the restaurant and renters were in possession of the first floor, the attic rooms, and the front half of the second story. The traversers, it turned out, lived in the back portion of the second story of House No. 1310 East Monument Street, and the illegal betting was carried on by the convicted traversers in their second story back room in No. 1310. It does not appear that the officers knew or had reason to believe that the two buildings were physically separate and that the upper stories were occupied by different tenants. The warrant was for the premises to be searched, and not the person. There is nothing in

the record to indicate that the officers had any cause to believe that certain rooms of the premises, rather than both buildings, were being used for unlawful gambling. The situation must be determined as it was observed at the time of the application, and both buildings appeared to be used for ingress and egress by those suspected of maintaining and using a gambling establishment. Here the outward appearances of the two premises reasonably supported the belief that both premises were being used for an unlawful purpose, and there was no necessity for a search warrant for each building.

If the two premises were occupied for distinct lawful use, there was no occasion for watchmen to be stationed in front of each building, whose conduct, as observed by the policeman on duty, was that of the guards of a gambling place; nor would there be a man watching from a second story window of one of the houses. Then the officer saw five men go down an alley and into the rear of the building on the premises known as No. 1310, where the watchman was at the window. The officer next observed a man walk through the alley and turn in the direction of a garage in the rear of No. 1310, and "a few minutes later thirteen white men and six negroes came out from the direction of 1310 East Monument Street and the negroes leaped the fence of 1308 East Monument Street, and went through said house, the other men walking up an alley where they separated."

The next day, it is set forth in the warrant, the same officer saw two negroes in the doorway of No. 1308, who conducted themselves as watchers in and about a place where bets on races are taken and paid. He noticed a man, who said something to the two negroes, and one of them went inside No. 1308, and the other walked around the corner. The white man crossed over to where the officer stood and looked him over carefully; walked a short distance and stopped for about five minutes and then returned, walking by the officer, and going back to No. 1310, where he talked with a negro, who later walked to the corner of Central Avenue and Monument Street.

The white man went to the corner of Eden and Monument Streets and talked to several negroes, and then went north on Eden Street toward the rear alley. At the time mentioned, this officer saw two negroes enter 1310 and seven negroes enter 1308, and four come out of 1308. He observed "there are always negroes in front of 1308 East Monument Street, and a negro always stands in the entrance of No. 1310 East Monument Street." It is upon this report of the officer, who had personal knowledge, that his superior officer made the information and oath upon which the judge rightly found the facts sufficient to constitute probable cause for the writ to issue. *Goodman v. State,* 178 Md. 1, 11 A. 2nd 635; *Commonwealth v. Certain Intoxicating Liquors,* 110 Mass. 182, 186; *Dumbra v. United States,* 268 U. S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032; *Silverstein v. State,* 176 Md. 533, 6 A. 2nd 465, 467, 468; *Brish v. Carter,* 98 Md. 445, 450, 451, 57 A. 210. No error is found on this score and, under the given circumstances, it was not error to combine under one writ the right to search the two suspected premises instead of issuing a separate writ for the search of each one. *Gray v. Davis,* 27 Conn. 447; 24 *R. C. L., Search and Seizure,* sec. 16, pp. 713, 714; *Steele v. United States,* 267 U. S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757; *Commonwealth v. Dana,* 2 Metc. (Mass.) 329, 336.

The fact that no formula may be stated with reference to the test of what premises may be searched, and how the premises must be described, is shown by the cases collected in 3 *A. L. R.* 1518, 1519; 13 *A. L. R.* 1318, 1319; 27 *A. L. R.* 751-753; 39 *A. L. R.* 841; *Cruze v. State,* 114 Tex. Cr. R. 450, 25 S. W. 2nd 875; 68 *A. L. R.* 1186-1191. Every case will depend upon its particular facts and circumstances.

The fifth and final ground of reversal is that the officers in the execution of the writ took possession of a lottery book, which was found in a cupboard in a box which also contained four dollars in nickels. It is claimed that the lottery book is not included in the property

described in the warrant, and so should have been returned and excluded from evidence as its seizure was unlawful. The language of the writ was "to search the entire premises for any and all race track and book-making paraphernalia, and other similar evidence found there."

As has been indicated by this opinion, the search warrant was duly issued, and authorized the search of the premises. The question now under consideration is in reference to the execution of the writ. The traversers alleged that the lottery book is their property, but that it was not described in the warrant, and so the statute requires its return to the traversers and its rejection when offered in evidence.

A "lottery book," is well within the designation: "book making paraphernalia and other similar evidence found" on the premises in connection with the charge that gambling is there conducted on the result of trotting, pacing and running races, and that a book or pool is there made on the result of such racing. The circumstances indicate the use to which the book was put.

As Sergeant Amrein approached the premises, a man at the window gave warning to those on the inside. After the officer had forced his way into the room on the second story where the men were, he looked into a hole in the chimney and found a bag in which there were racing sheets and written information in reference to the horses, and bets on the races. He looked over some for September 18th and 19th, the day of the search, and for the two days the bets made a total of $1,264. There was a pay telephone in the room, but no earphones. The officer inquired of the traverser Feldman if they were in the chimney. On his reply that they might be, he went to the roof and looked down, but it was too dark for him to see to the bottom. He then descended to the restaurant on the first floor, and took a piece of tin off the wall, which was a part of the chimney, and, putting his hand in the opening, he found and pulled out the earphones. The officer took the earphones

upstairs and connected them with a "plug-in" underneath the telephone. He listened and heard the running of races at various tracks. He noticed there was a locked cupboard in the room. As the officer could not get a key from those present, he broke into the cupboard and took out a box in which he found a "lottery book and four dollars in nickels."

Under the facts and circumstances set forth, the "lottery book" was within the purview of the property authorized to be seized by the warrant. The use of such a book in certain forms of gambling on the results of races is shown by the authorities cited. It was a part of the equipment. *State v. Lovell*, 39 N. J. L. 458, 462; *Hardwick v. Lane*, (1904), 1 K. B. 204; *Boyland v. State*, 69 Md. 511, 16 A. 132; *Smith v. State*, 68 Md. 168, 11 A. 758; *Ballock v. State*, 73 Md. 1, 5, 20 A. 184; *James & Gamble v. State*, 63 Md. 242, 259-265; *Spies v. Rosenstock*, 87 Md. 14, 16, 39 A. 268; Code, art. 27, sec. 247. See *Marron v. United States*, 275 U. S. 192, 199, 48 S. Ct. 74, 72 L. Ed. 231, 238.

Finding no reversible error, the judgment will be affirmed for the reasons stated.

*Judgment affirmed, with costs to the appellee.*