SMITH ET. AL. *v.* STATE
[No. 2, October Term, 1948.]

330

332

Decided November 10, 1948.

The cause was argued before MARBURY, C. J., DELA-PLAINE, HENDERSON, and MARKELL, JJ.

*R. Palmer Ingram,* with whom was *T. Barton Harrington* on the brief, for the appellants.

*Harrison L. Winter, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *William H. Maynard, Deputy State's Attorney for Baltimore City,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here are two appeals in one record by Margaret E. Smith and Ruth Schuchman, appellants, from judgments and sentences on conviction of unlawfully making and selling books or pools on horse races and keeping a house for the purpose of betting and gambling. The cases were tried by the trial judge sitting as a jury.

The appellants contend, firstly and thirdly, that there was not sufficient showing of probable cause set forth in the affidavit upon which the search warrant was issued, (Code, Article 27, Section 306), and therefore the search warrant should have been quashed and evidence obtained

thereby was not admissible. On February 3, 1948, a motion was filed by the appellants to quash the search warrant and suppress the evidence obtained thereunder. On the same day the appellants were arraigned and pleaded not guilty. After the pleas, the trial judge immediately took testimony on the motion to quash the search warrant. The appellants testified and denied and controverted the matters set out in the affidavit and witnesses were produced by the State to sustain the allegations set forth therein. After this hearing on the motion the trial judge made no ruling thereon, but called the case for trial on its merits and suggested that the appellants renew the motion to quash the evidence obtained under the search warrant when that evidence was offered by the State during the trial, which suggestion was followed by the appellants. This motion was overruled by the trial judge at the close of the entire case when the appellants were convicted and sentenced.

Code, Article 27, Section 306, *supra,* provides that "at any time, on application to a Judge of the Circuit Court of any County or of the Criminal Court of Baltimore City, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, said judge must cause it to be restored to the person from whom it was taken". Federal Rule 41, Search and Seizure, Federal Rules of Criminal Procedure, 18 U. S. C. A., now supersedes the Federal Espionage Act of June 15, 1917, c. 30, Title XI, Paragraph 1, 40 Stat. 228, 229, 230, 18 U. S. C. A. beginning at Section 611. Although the Maryland Act, Article 27, Section 306, *supra,* is modeled after the Espionage Act, *supra,* there are provisions contained in the Espionage Act and in Federal Rule 41, *supra,* that are not included in Article 27, Section 306, *supra.* Federal Rule 41, *supra,* 18 U. S. C. A., Cumulative Annual Pocket Part, pages 284, 285, provides that the motion for the return of the property "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant

was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Therefore, the usual practice in the Federal courts is to dispose of the motion before trial. Previous to the adoption of Article 27, Section 306, *supra,* Acts of 1939, Chapter 749, Sec. 259A, it was held that the motion to quash a search warrant should not be heard before trial. *Sugarman v. State,* 173 Md. 52, 58, 195 A. 324. The usual practice since the passage of that Act has been to hear it during the trial of the case, as pointed out as dictum in the case of *Hill v. State,* 190 Md. 698, 703, 59 A. 2d 630, 633, which quoted the rule laid down in *Sugarman v. State, supra,* but which we do not now think is mandatory after the passage of Article 27, Section 306, *supra.* We are of opinion that as this section uses the words "at any time", the Legislature intended that a hearing on motion to quash the search warrant might be heard either before or during the trial. *Goodman v. State,* 178 Md. 1, 7, 11 A. 2d 635.

We must next decide whether, in the hearing on the motion to quash the search warrant, the matters in the affidavit showing probable cause can be controverted or disputed and the warrant thereby nullified. In the instant cases the affidavit was controverted and disputed. The Federal Espionage Act of June 15, 1917, 18 U. S. C. A., § 625, *supra,* specifically provided: "If the grounds on which the warrant was issued be controverted, the judge or commissioner must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and subscribed by each witness." Federal Rule 41, *supra,* now provides: "The judge shall receive evidence on any issue of fact necessary to the decision of the motion." Neither of these above quoted provisions are contained in the Maryland Act, Article 27, Section 306, *supra.*

It is said in *Cornelius on Search and Seizure,* 1930 Edition, Chapter 7, Paragraph, 169 (89), and Paragraph 170, in part: "Some courts have held that, unless the statute otherwise provides, as for example the federal

code, that where an affidavit is filed or testimony taken for the issuance of a search warrant and the affidavit or testimony makes out a *prima facie* case of probable cause, the same can not be controverted or disputed and the warrant thereby nullified. The cases have even gone so far as to hold that the complainant himself will not be allowed to dispute the truth of the averments he made in the affidavit so as to vitiate a criminal warrant and where a statute required the affidavit to be made by a reputable citizen the defendant will not be permitted to go behind the face of the affidavit and show that it was not so made. Nor will the accused be permitted to question the source or accuracy of affiant's information. So far as federal search warrants are concerned the Espionage Act provides the procedure where it is desired to controvert the question of probable cause for the issuance of the search warrant. * * *" "The defendant at the trial may not dispute or controvert the averments in the affidavit for the search warrant for the purpose of invalidating the search, nor may he cross-examine the person who made the affidavit as to the truth of such averments."

The better rule seems to be that the court's consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted, as was done in the instant cases, by receiving the testimony of the accused and other witnesses. *Ray v. State,* 1929, 43 Okl. Cr. 1, 276 P. 785; *Commonwealth v. Thacker,* 1929, 229 Ky. 488, 17 S. W. 2d 399; *Piper v. State,* 1931, 116 Tex. Cr. R. 378, 34 S. W. 2d 283; *Cornelius on Search and Seizure,* Sections 169 and 170, *supra.* This rule would not, of course, prevent the accused from showing, for instance, that the affiant did not in fact swear to the affidavit as recited therein. Although the Federal rule is not before us here it is doubtful, in spite of the statement in *Cornelius on Search and Seizure, supra,* that the few Federal cases on the exact point hold that in determining probable cause, the truth of the

alleged grounds can be controverted. Specifically, the existence of probable cause cannot be negatived by the mere denial by the accused of the facts sworn to. *United States v. Nagle*, D. C., 34 F. 2d 952. We are of opinion that any inquiry as to whether the affidavit, on which the search warrant was based, showed probable cause is confined to the affidavit alone and testimony should not be taken to controvert the truth of the allegations therein.

The affidavit of Captain Alexander L. Emerson of the Department of Police of Baltimore City, upon which the search warrant was issued, made the following allegations. There was probable cause to believe a misdemeanor had been committed in relation to bookmaking in the premises at 430 East 20th Street, a three story brick dwelling house, the telephone number there being Hopkins 4453 listed to Kenneth W. Hughes, second floor. Officer Gerald Dolan was instructed to watch the premises in an effort to obtain evidence pertaining to bookmaking. On January 9th, 1948, Dolan watched in the vicinity of said premises, remaining from 12 o'clock noon to 1 P. M. and again from 5 P. M. to 6 P. M. At about 12:50 P. M. he saw a white man described therein carrying an Armstrong scratch sheet and a daily racing form walking east on 20th Street. When the man reached the premises he hesitated momentarily and acted suspiciously by looking around to ascertain whether he was being watched or followed and then entered the premises. The same man came out of the premises about 5:35 P. M. and hurriedly walked away. The time that this man entered the house was prior to the post time of the first horse race and he left the premises at a time when most betting activities conducted over the telephone had been concluded for the day. The papers carried by him are generally used by bookmakers in their unlawful business. On January 10th, Dolan observed the same activities. On January 11th, a Sunday when races are not conducted, he watched the same premises but did not see the above described man enter or leave.

On January 12th, Officer Dolan, watching the same premises, saw the same man previously seen on January 9th and 10th, enter the premises at the same time as on those previous days and in the same suspicious manner and carrying an Armstrong scratch sheet and daily racing form. At about 2:30 P. M. Dolan called telephone number Hopkins 4453 aforesaid. The telephone was answered by a male voice who said: "Hello." The officer then said: "This is Bill, give me five to win on Mumbo Jumbo in the 7th at Gulfstream." The male voice then replied: "O. K. Bill, is that all?" The officer answered: "Yes," which concluded the telephone conversation. Mumbo Jumbo is the name of a race horse which was entered to run that same day in the 7th race at the Gulfstream Park Race Track. In race horse parlance "five to win" means that $5.00 is bet on the horse. At about 5:55 P. M. Dolan saw the same man come out of the premises and hurriedly walk away.

Upon the aforesaid affidavit, sworn to and signed by Captain Alexander L. Emerson, an associate judge of the Supreme Bench of Baltimore City, reciting that he had probable cause to believe that the law prohibiting betting, wagering, or gambling on the results of horse racing, was being violated at the premises described therein, and setting forth the facts set out in said application, issued the search warrant applied for. The warrant authorized Captain Emerson "with the necessary and proper assistants, to enter into the said premises at 430 East 20th Street, a three story dwelling house * * * and there diligently search the said premises and all persons found on the said premises for rundown sheets" and other betting paraphernalia described therein. The warrant further ordered that any such paraphernalia so found and the body of the white man described therein and all other persons found on the said premises, participating in the bookmaking activities, be apprehended.

Code, Article 35, Section 5, commonly known as "The Bouse Act", provides that no evidence shall be admissible in a trial of a misdemeanor which has been procured by

an illegal search or seizure. The Act, Article 27, Section 306, *supra,* authorizing the issuance of a search warrant provides that the probable cause must be determined by the judge who issues it. *Wood v. State,* 185 Md. 280, 286, 44 A. 2d 859. As this Court pointed out in *Goodman v. State,* 178 Md. 1, at page 10, 11 A. 2d 635, what acts constitute probable cause seem incapable of definition. It is less than certainty or proof, but more than suspicion or possibility. The facts alleged to show probable cause are sufficient if they are such as to warrant a prudent and cautions man in believing that the offense has been committed. *Goodman v. State, supra; Wood v. State, supra; Stacey v. Emory,* 97 U. S. 642, 645, 24 L. Ed. 1035; *Carroll v. United States,* 267 U. S. 132, at page 161, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; *Dumbra v. United States,* 268 U. S. 435, 441, 45 S. Ct. 546, 69 L. Ed. 1032.

No search warrant should be issued if based merely on information and belief, unless the facts and the sources of information on which the belief is based are stated. *Allen v. State,* 178 Md. 269, 275, 13 A. 2d 352. The appellants contend that the facts set out in this affidavit are more or less of a stereotyped character and are used in practically all of the search warrants in Baltimore City. Of course, the Act does not contemplate anything of that character. The business of bookmaking is conducted furtively and in such a secret manner that suspicious actions on the part of persons entering a suspected premises during racing hours and leaving after racing hours are important links in the chain of circumstances justifying the issuance of a search warrant. *Goodman v. State, supra,* 178 Md. page 11, 11 A. 2d page 640. The police know the usual actions of bookmakers and are experienced in the detection of those violating the law. However, in the instant cases we have more than these suspicious circumstances. Here there is a sworn statement that on more than one occasion racing forms and scratch sheets were seen in the possession of the suspicious person entering the suspicious premises, always before

or during racing hours. It is true that it would be difficult for an officer to observe racing forms and scratch sheets in the hands of such suspicious persons. However, the affidavit here so alleges and that evidence was properly before the judge at the time he issued the search warrant. If false affidavits are made, of course, the persons making them are liable to criminal prosecution. In fact, Article 27, Section 307, immediately following Section 306, *supra*, declares that the statute with reference to perjury and subornation of perjury shall apply to all persons who make oath or affirmation or procure the same under Article 27, Sections 306 and 307, *supra*. The affidavit also alleges that the officer called the telephone listed for this suspected house and placed a bet over the telephone. All of these facts, set forth in the affidavit, constitute probable cause and are sufficient to warrant a prudent and cautious man in believing that the offense alleged had been committed. We are therefore of opinion that the affidavit showed on its face probable cause.

Appellants contend that as there is no evidence that the alleged telephone call to Hopkins 4453 was ever received at that number no testimony relating to this telephone call was admissible. This contention seems to be answered by the case of *Courtney v. State*, 187 Md. 1, 48 A. 2d 430, 432, where the authorities are reviewed and discussed, and the ruling in the case of *Baum v. State*, 163 Md. 153, at page 160, 161 A. 244, re-affirmed. In *Baum v. State*, *supra*, this Court held that where a police officer called the telephone number at the suspected premises and placed a bet with a person who answered the telephone and whom he could not identify, the conversation was admissible.

The objection is also made that Captain Emerson made the application for the search warrant, while the information which he gave therein was not within his personal knowledge but only within the personal knowledge of Officer Dolan. This contention is answered by the case of *Allen v. State*, 178 Md. 269, 13 A. 2d 352, *supra*, where

the affidavit was made by Sergeant Ralph Amrein of the Baltimore City Police Department. It was said in that case in 178 Md. at page 275, 13 A. 2d at page 355: "The second objection to the validity of the warrant is that the facts set forth in the warrant as the grounds for its issuance appear from the warrant not to be facts within the personal knowledge of the applicant, but facts verified by his oath on information and belief. Nevertheless, the facts, together with the responsible official source from which the facts were derived, were set forth in the warrant as the basis of the belief of the affiant, and this is all that is necessary, if such facts are sufficient to constitute probable cause. *Cornelius on Search and Seizure,* (2nd ed.), sec. 165 (85)."

The appellants contend secondly that the search warrant here was general in its character within the meaning of Article 26 of the Bill of Rights of Maryland. Article 22, of the Bill of Rights of this State, provides that no man ought to be compelled in a criminal case to give evidence against himself and Article 26 provides in part that "all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." From the evidence in these cases the premises at 430 East 20th Street appeared to be a private residence with one entrance and a telephone was listed for that premises. The house was occupied by one of the appellants, Margaret E. Smith. Ruth Schuchman, the other appellant, occupied a room on the second floor. The search warrant directed a search of that house. It also ordered the apprehension of a person described in the warrant and of all other persons who might be found on the premises participating in the bookmaking activity. This warrant could not be held to be general in its scope. It described the particular premises to be searched and a person to be apprehended. According to the record, no search was made of the person of Margaret E. Smith although she took bets in the presence of the officers. The only search made

of Ruth Schuchman was when the officer examined the contents of her pocketbook. This search was made after she told the officer that she was taking bets, admitted ownership of the pocketbook, and handed it and the papers therein to the officer. This testimony is not denied.

Where an offense is committed in the presence of an officer, he, of course, is authorized to arrest the offender and as an incident thereto to seize the immediate evidence of the crime. *Callahan v. State,* 163 Md. 298, 301, 162 A. 856; *Bass v. State,* 182 Md. 496, 506, 35 A. 2d 155; *Hill v. State,* 190 Md. 698, 702, 59 A. 2d 630, 632. In the case of *Allen v. State,* 178 Md. 269, 13 A. 2d 352, *supra,* the premises described in the search warrant were numbers 1308 and 1310 East Monument Street in Baltimore City. The Court said in that case in 178 Md. at pages 276 and 277, 13 A. 2d at page 356: "There is nothing in the record to indicate that the officers had any cause to believe that certain rooms of the premises, rather than both buildings were being used for unlawful gambling. The situation must be determined as it was observed at the time of the application, and both buildings appeared to be used for ingress and egress by those suspected of maintaining and using a gambling establishment. Here the outward appearances of the two premises reasonably supported the belief that both premises were being used for an unlawful purpose, and there was no necessity for a search warrant for each building." Likewise, in the instant cases, the situation of the premises was determined as it was observed at the time of the application. There was no reason for the officer to believe that the claim would be made that there were two private homes in one private dwelling.

Fourthly, the appellants contend that the taking of the bet by one of the appellants, Margaret E. Smith, in the presence of Captain Emerson, was not unlawful in view of the provision of Article 35, Section 5, commonly called "The Bouse Act", *supra.* She claims that this was done to absolve an innocent person who came in the room

and from whom she took the bet in order that he would not be held, detained, and searched by the police officer as one participating in the bookmaking activity. It is clearly no defense to the doing of an illegal act in the presence of an officer, that it was done for the convenience of a customer.

*Judgments affirmed, with costs.*