# BRATBURD *v.* STATE
[No. 174, October Term, 1948.]

*Decided June 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph B. Simpson, Jr.*, with whom were *Vivian V. Simpson* and *Simpson & Simpson* on the brief, for appellant.

*Harrison L. Winter, Assistant Attorney General* with whom were *Hall Hammond, Attorney General, J. Edgar Harvey, Deputy Attorney General* and *Walter W. Dawson, State's Attorney for Montgomery County* on the brief, for appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment on conviction of unlawful possession of lottery slips. Code, Art. 27, sec. 411. The only question really presented is the validity of a search warrant and the admissibility in evidence of the lottery slips seized under it, *i. e.*, whether the facts set forth in the search warrant and the applica-

tion for it show probable cause for believing the existence of the grounds on which the warrant was issued. Art. 27, sec. 306. Before the trial defendant filed a motion to quash the search warrant, which was overruled. At the trial the lottery slips seized were admitted in evidence over defendant's objections.

The sworn application of Sergeant Whalen of the Montgomery County Police Department, dated July 7, 1948, alleges that there is probable cause to believe, and he does believe, that a misdemeanor is being committed by defendant in Montgomery County in a 1947 Packard sedan, dark blue in color, bearing Maryland tag number 761-333, owned and occupied by defendant, in unlawfully having in his possession, both upon his person and in the automobile, lottery slips and money received from and for the sale of such lottery slips in violation of Art. 27, sec. 411 of the Code. The search warrant, issued the same day by Judge Prescott, recites that it appears to him, by written application signed and sworn to by Sergeant Whalen, and the judge finds, that there is probable cause to believe that a certain misdemeanor (describing it in the same way as in the application) is being committed by defendant in the automobile and upon his person. The grounds for probable cause, "as also set forth" in the application, are that (setting forth facts stated by Sergeant Whalen in the application "as the basis for his belief") :

Sergeant Whalen was informed by Officer Willey that defendant visited no. 202 Geneva Avenue regularly at approximately 3:00 P. M. for the purpose of accepting lottery bets. Whalen secluded himself in a building across the street from no. 202. On July 2, 1948, at 3:30 P. M., he observed the described automobile pull up to the curb in front of no. 202, defendant entered the house at no. 202, stayed there about two minutes, came out, in his left hand was paper money, his "right hand pants pocket" was "bulging" with what Whalen believed to be paper money and silver coins, "together with policy lottery slips," he entered the automobile and

drove away. Only July 3d, at 2:30 P. M., Whalen, in company with Corporal Miller, while so secluded, observed a colored woman, carrying a wallet in her hand, enter the house; at 3:15 P. M. they observed the automobile pull up to the curb, defendant got out and entered the house for five minutes, he and the colored woman then came out, she had in her hand paper money which she was placing into the wallet, defendant got into the automobile and drove away. On July 5th, at 3:00 P. M., Whalen and Miller observed the automobile pull up to the curb, defendant got out, his "right hand pants pocket" was "bulging with what they believed to be" paper money and silver coins, "together with policy lottery slips," and was so heavy that they observed him "place his right hand on the outside of the pocket" and support the weight of the pocket as he ascended the steps of no. 202, he came out five minutes later, in his right hand "they observed a quantity of slips of paper about the same size and color as is used in the operation of a lottery," and he drove away in his car as previously. On July 6th, at 3:00 P. M., Whalen and Miller observed a colored woman drive up to the curb at no. 202 in a 1941 Dodge sedan and get out of her car "with a yellow slip of paper in her right hand," which "appeared to be of the same size and color used in the operation of a lottery," she walked up the steps to the front yard of no. 202, where she was met by another colored woman wearing pink slacks, the first woman handed the second the yellow slip and got back into the Dodge and drove away and the other woman went back into no. 202; at 3:15 P. M. the Packard pulled up to the curb, defendant got out, the same pocket was "bulging" in the same way, he went into the house, stayed about two minutes, then came out, "with his right hand in his right hand pants pocket," walked to the left side of his car, opened the door with his left hand, pulled his right hand out of his pocket, "in his right hand was a package of slips of paper about the same size as are used in the operation of a lottery," he placed these papers on the front seat of the car beside

him, and then drove away. From the Department of Motor Vehicles Whalen has determined that the Packard is listed to defendant. From his observations he has determined that the house at no. 202 is occupied by colored people, and on three separate occasions has observed a large gathering of colored people at this house. The warrant directs search of the automobile and of defendant for lottery slips and money received from and for the sale of such lottery slips. Upon search under the warrant, 14 slips and $25.37 in cash were seized from one of his pockets, $27.86 in cash from another and $250 in cash from a hip pocket. From the glove compartment of the automobile were seized five envelopes containing in all 201 slips and in two of them $45.41 in cash.

In support of his contention that there was no probable cause shown for the issuance of the search warrant, defendant relies on *Wood v. State,* 185 Md. 280, 44 A. 2d 859. In that case we said: "Probable cause is more than suspicion or possibility but less than certainty or proof. On the facts this case is near the border. The question of probable cause must be determined by the judge, not by the applicant for the search warrant. * * * But in making this determination, the experience and special knowledge of the police officers who are applicants are among the facts which may be considered." 185 Md. at page 286, 44 A. 2d at page 861.

On the facts we think the instant case is well beyond the border. From the reported opinions of this court we might almost profess a superficial quasi-expert knowledge of some of the indicia of the "numbers" game and other gambling. As we have said, we may at least consider the experience and special knowledge of the police officers who are applicants for search warrants. It seems to be almost common knwledge that many negroes are victims of the numbers game, apparently because the smallness of the amount that may be bet attracts persons whose menas are not sufficient for two-dollar bets and also makes a large number of such customers necessary for profitable operation. To serve negro cus-

tomers negro "runners" or other associates (of not so limited means) may be necessary or helpful. Presumably the police officers, perhaps even the judge, had some local familiarity with the neighborhood in question, *e. g.,* whether business or residential, newly developed or old, rich or poor, or the like. So far as appears, when Sergeant Whalen began his vigil his information from Officer Willey was not more than suspicion. Bulging pockets do not necessarily indicate money or lottery slips. There are many slips of paper besides lottery slips. But money and lottery slips are the stock in trade of the numbers game. On four successive days, except Sunday the 4th of July, at from 3:00 to 3:30 P. M., defendant drove up in his automobile, entered the house, stayed from two to five minutes, and left. On three of the four days his pocket was "bulging." On July 5th he had slips, that looked like lottery slips, in his hand; on July 6th he took a package of such slips out of his "bulging" pocket and put them beside him on the seat of the automobile. One of these days one negro woman handed another a slip; another day a negro woman came out with defendant and put money in a wallet she was carrying. The house was occupied by negroes and on occasions large gatherings of negroes had been seen there. We think these facts showed probable cause—more than suspicion or possibility—that defendant had lottery slips in his automobile. Since probable cause is shown by Sergeant Whalen's own observations and not by information received by him from Officer Willey, it is unnecessary to consider several objections by defendant to an affidavit by Officer Willey, attached to Sergeant Whalen's application.

In the *Wood* case we held that the mere fact that numbers of negroes entered a "restaurant" and did not stay long enough for a meal did not show probability that they went there for some purpose other than a possible lawful business of a "restaurant," *e. g.,* sale of soft drinks, tobacco, candy, or other things. In the instant case it is suggested that defendant, who is an "interior

decorator," may have several jobs going on at the same time, may visit premises being decorated by him regularly, to make inspections or check up on employees, may carry money in his pockets for payrolls, or collect money from patrons, and may carry slips of paper for samples for wall paper or for color for paint. All this (except the size and appearance of the "samples") may be abstractly imaginable and physically possible, but has too little semblance of real life, or relation to the facts set out in the search warrant, to require consideration. The search warrant was valid, the motion to quash was properly overruled, and the slips seized were properly admitted in evidence.

Several times during the trial defendant "moved" that the $348.64—or $250 thereof—seized under the search warrant (or upon search of his person) be returned to him. He now attacks the fine of $1,000 imposed upon him, without return of the $348.64, as unlawful because in excess of the legal maximum of $1,000. No question of title to this $348.64, or any part of it, is before us on this appeal from the sentence or was before the lower court at the trial. A motion to quash a search warrant, under section 306 of Article 27, is not a substitute for an appropriate proceeding for the determination of title to this money. Apparently the money was evidence, or was held in *custodia legis* as available evidence, in the criminal case. The question of title to it could not be determined until after conclusion of the criminal case. *Dail v. Price*, 184 Md. 140, 144, 40 A. 2d 334.

*Judgment affirmed, with costs.*