BLAND *v.* STATE

[No. 133, October Term, 1950.]

*Decided April 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*J. Elmer Weisheit, Jr.*, with whom were *Lawrence E. Ensor* and *McKenrick and Weisheit* on the brief, for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *John E. Raine, Jr., State's Attorney for Baltimore County,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Clarence Bland, a Negro, resident of an apartment house at Turner's Station in Baltimore County, was charged by a criminal information with violations of the lottery law. He was tried before the Circuit Court for Baltimore County, sitting without a jury, and was found guilty on two counts: (1) keeping a room for the purpose of selling lottery tickets, and (2) permitting an apartment of which he was the owner to be used as a place for selling lottery tickets. Code 1939, art. 27, secs. 409, 410. From the judgment sentencing him to the Maryland House of Correction for one year and to pay a fine of $1,000, he took this appeal.

It appears that Sergeant Eitemiller, of the Baltimore County Police, made application to Judge Gontrum on July 11, 1950, for a warrant to search the apartment house at 407 Tompkins Court, in which Bland and his wife resided, and also his Lincoln convertible sedan. Sergeant Eitemiller averred in his affidavit that he had ordered Corporal Kessler to investigate a complaint that the lottery law was being violated in the apartment house, and then presented a detailed report of the Corporal's investigation. According to the affidavit, the Corporal watched the house for several hours on June 28 and again on July 5. On June 28 at 12:07 o'clock he saw a Negress enter the rear door with two paper bags, which apparently contained something light in weight. She came out at 12:15, went to 101 Tompkins Court, knocked at the door but did not enter, and returned to 407 Tompkins Court, and entered the rear door at 12:18. She came out two minutes later with the paper bags, which looked smaller but heavier than they did when she went in. Between 12:20 and 2 o'clock the Corporal saw eight men, eighteen women, a boy and a girl, all Negroes, enter the rear door and come out after a few minutes. On July 5 between 12:20 and 2:07 o'clock the Corporal saw three men, twenty women, and a boy enter the rear door without knocking and come out after a few minutes. Several of the women carried pieces of paper when they

went in. At 2:07 Bland arrived in his Lincoln sedan and entered the house. When he came out three minutes later, his pants pockets were bulging. He drove to Hamlin Court about a block away, stayed there a few minutes, and came out with a paper bag. The Corporal, following in the police car, found the Lincoln parked in front of a cafe on Dundalk Avenue, while Bland was sitting behind the wheel talking with a crowd of Negroes standing around the automobile.

Judge Gontrum issued a search warrant upon that affidavit. On the same day Sergeant Eitemiller and Corporal Kessler, accompanied by three other members of the police force, raided the apartment house.

Corporal Kessler testified that the officers entered the rear door and went to the second-floor apartment, and on opening the door of the living room they found Bland's wife sitting at a desk writing on a numbers tally pad, and Lillian Walker, who lived on the first floor, sitting beside her with three slips of paper in her hand. The officers also found a tally pad on the desk, and $42 worth of numbers slips in a drawer of the desk. They also found a "rundown tape from the headquarters where these tickets are turned in every day." They also found a calendar showing the winning numbers for each day from the first of January. It is obvious that, if the search warrant was legal, the evidence was ample to sustain the conviction, because it was undisputed that appellant and his wife were the lessees and occupants of the second-floor apartment.

*First.* Appellant complained because the record in this case does not contain a definite notation that the affidavit and the search warrant were admitted in evidence. There is no merit in this objection. Corporal Kessler, the first witness on the stand, identified the affidavit and the warrant. The affidavit was marked Exhibit 1, and the warrant Exhibit 2. The defense objected to their admission, and the trial judge overruled the objection. Objections were also made to the admission of Corporal Kessler's testimony and to the

gambling paraphernalia seized in the raid, but all of the objections were overruled. It is clear from these entries in the record that it was thoroughly understood by the judge and by the counsel on both sides that the affidavit and the warrant were admitted in evidence. Moreover, after Corporal Kessler testified that he had a search warrant, the warrant was "marked for identification" and was handed to the judge. This was enough without technically offering the warrant in evidence, if the warrant was sufficient in law, as we hold it was.

*Second.* Appellant's chief contention was that the allegations of the affidavit were not sufficient to show probable cause for the belief that numbers tickets were being sold in the apartment house. As stated in *Bratburd v. State,* 193 Md. 352, 66 A. 2d 792, probable cause which will authorize the issuance of a search warrant is more than suspicion or possibility but less than certainty or proof. Appellant relied on *Wood v. State,* 185 Md. 280, 44 A. 2d 859, where the Court invalidated a search warrant based on an affidavit that a number of men and women had entered a restaurant on several days and stayed inside only a few minutes. The Court held that the restaurant may have been selling tobacco, soft drinks and candy, and the fact that a number of people had entered the restaurant and remained only a few minutes was not of itself sufficient to constitute probable cause for the belief that numbers tickets were being sold in the restaurant.

Appellant contended that the people who entered the rear door of the house in this case could conceivably have come for some lawful purpose. As illustrations he suggested (1) that the house may have been the headquarters of one of the political parties "during the very active campaign of last summer"; or (2) that the visitors may have been answering a help-wanted advertisement; or (3) that some other apartment had been advertised for rent, and the advertisement had given the wrong number; or (4) that the visitors may have agreed to solicit for some worthy cause and had

come to receive instructions before starting out on their canvass. We cannot believe that any of these inferences could have been reasonably drawn from the facts. Sergeant Eitemiller swore in his application for the warrant that, according to Corporal Kessler, 29 people entered the house on one day, and 24 on another, between noon and about 2 o'clock. After 2 o'clock the stream of visitors stopped. He also alleged that, in order to participate in a certain day's lottery, numbers must be placed before 2 o'clock, when the first race, from which one of the numbers was taken, was called. The allegations of the affidavit that some of the visitors carried paper bags, while others carried pieces of paper, and that all of them entered the house without knocking and remained inside only a few minutes were sufficient to show probable cause for the belief that the house was being used for violations of the lottery law.

*Third.* Appellant contended that the affidavit was illegal because it did not allege the source of the affiant's information. It is an established rule that the facts alleged in a search warrant need not be within the personal knowledge of the applicant, but it is sufficient if the warrant discloses responsible official sources from which the facts were obtained as the basis of the applicant's belief. *Allen v. State,* 178 Md. 269, 13 A. 2d 352; *Smith v. State,* 191 Md. 329, 62 A. 2d 287, 5 A. L. R. 2d 386; *Kapler v. State,* 194 Md. 580, 587-588, 71 A. 2d 860, 863. In this case we find (1) that Sergeant Eitemiller and Corporal Kessler were both members of the Baltimore County Police Department specially assigned to investigate violations of the gambling laws, (2) that the Sergeant ordered the Corporal to make the investigation at 407 Tompkins Court, and (3) that the Sergeant's affidavit presented a detailed report of the Corporal's observations. The clear import of the affidavit was that the Sergeant had obtained the information from the Corporal.

*Fourth.* Appellant attacked the search warrant on the ground that it was a general warrant, because it author-

ized a search of two separate apartments and an automobile. General warrants were not known in the earliest period of the common law. They were first used in England to search for stolen goods. In course of time the Secretary of State issued them to search private homes for books and papers which might be used to convict their owners, or the authors, or publishers, on the charge of libel. Their use was gradually extended until persons and premises were subject to practically unlimited search and seizure. The writs of assistance, the issuance of which was one of the causes of the American Revolution, were a form of general warrant. They empowered justices, sheriffs and other officers to enter and search any home for uncustomed goods and to command all to assist them. It was in revolt against that practice that the framers of the Constitution wrote in Article 26 of the Maryland Declaration of Rights the provision that "all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

We cannot accept the contention that the search warrant in this case was a general warrant. The Act of the Legislature authorizing the issuance of search warrants directs that any such warrant shall name or describe "with reasonable particularity" the individual, building, apartment, premise, place or thing to be searched. Code 1939, art. 27, sec. 306. But a search warrant is not illegal merely because it authorizes a search of more than one apartment or building. For example, in *Allen v. State*, 178 Md. 269, 13 A. 2d 352, the warrant authorized the search of two adjoining buildings. Although they were separately constructed and did not have a common entrance, and were occupied by different families, it was the opinion of the police that they were connected by a common unlawful use, and their opinion was warranted by the facts alleged in the warrant. Likewise, in *Asner v. State*, 193 Md. 68, 65 A. 2d 881, the warrant authorized the search of a filling station

and also an automobile and all persons found in it. Again, in *Lucich v. State*, 194 Md. 511, 71 A. 2d 432, the warrant authorized the search of all of the cabins as well as the office in a tourist camp.

In the case at bar the apartment house contained two apartments, one known as 407A on the first floor, and the other as 407B on the second floor. The first-floor apartment was usually entered from the front door, while the entrance to the second-floor apartment was from the rear. But, according to Corporal Kessler, the first-floor apartment could also be reached from the rear stairway. The outward appearance of the house reasonably supported the belief that it was being used for gambling. It was a small house and the two apartments were closely connected. The police officers had no way to know with certainty whether the violations of the law were being committed in one apartment or both. For these reasons the warrant was legal, even though it authorized a search of both apartments and the automobile.

*Fifth.* There is no merit in the complaint that the State's Attorney threatened and frightened Mrs. Waller while she was on the witness stand. Mrs. Waller admitted that when the police arrived on the scene, she had a numbers slip in her hand while appellant's wife was writing numbers. It was then that the State's Attorney remarked that the witness was "a very hostile and reluctant witness." He thereupon made the following statement to the judge: "I want to warn her that she is under oath and she has given certain testimony in the State's Attorney's office, and I want to warn her that if she changes her testimony, I intend to prosecute her * * *." Instead of striking out the statement, the judge admonished the witness that she was under oath and should tell the truth. Inasmuch as the witness did not testify further concerning any material facts, the State's Attorney's remark was not prejudicial.

*Judgment affirmed, with costs.*