## FLEMING *v.* STATE

[No. 42, October Term, 1952.]

*Decided December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Ellis Levin,* with whom was *Joseph F. DiDomenico,* on the brief, for appellant.

*Ambrose T. Hartman,* Special Assistant Attorney General, with whom were *J. Edgar Harvey,* Deputy Attorney General, *Anselm Sodaro,* State's Attorney for Baltimore City, and *J. Harold Grady,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a conviction for violation of the lottery laws in Baltimore City by having in possession lottery tickets, books, and records.

The lottery paraphernalia was found in appellant's second floor apartment. She contends her motion to dismiss the search warrant should have been granted because the warrant fails to show upon its face any reasonable or probable cause for its issuance and also that it is a general warrant. With these contentions of the appellant we do not agree.

The search warrant in this case authorized Lieutenant Joseph J. Byrne to search "the said premises at 1135 N. Monroe Street, a two-story brick dwelling, occupied on the first floor as the Monroe Cafe." As to probable cause, the search warrant alleges the following facts based on the signed and sworn statement of Lieutenant Bryne. Acting on a complaint by a member of the Maryland State Police that a man, known as Robert E. Stanton, described therein, and hereinafter referred to as Stanton, writes and collects lottery numbers in Frederick and carries them to Baltimore, the officers on January 30, 1952, went to the vicinity of the 2900 block of Edmondson Avenue to look for the bus from Frederick. They then saw a man answering the description of Stanton alight from the Blue Ridge bus and hail a taxicab. He was driven to the 900 block of

North Monroe Street where he alighted, walked to, and entered 1135 North Monroe Street. This man carried in his hand a brown paper bag, partially filled with unknown contents. Upon reaching the door of the premises he was met by another man wearing a vest and white apron, described therein, who spoke to the said Stanton. The two men then held a brief conversation and acted suspiciously by looking about in all directions as if to ascertain whether they or the premises were being watched. About five minutes later the officers looked through the tavern window but did not see either of these two men. They then observed the same premises from a greater distance and saw Stanton on the second floor, looking out of the window. Again on February 7, 1952, about 12:25 P. M. they saw the same man alight from the Blue Ridge bus carrying a large brown paper bag. He engaged a taxicab and went in the same manner to the premises at 1135 North Monroe Street where he met the same man wearing a white apron. The two men acted suspiciously and entered the tavern. At about 12:45 P. M. Stanton came hurriedly out of the tavern without the bag and met another man who produced "some yellow looking slips" of the kind and color generally used in the operation of a lottery. After some conversation, this man handed Stanton the "yellow looking slips" and Stanton returned to the tavern. Again on February 11, 1952, Stanton alighted from the Blue Ridge bus carrying a large brown paper bag and again went to 1135 North Monroe Street and after acting suspiciously by looking around to see whether he was followed, entered the tavern. When he left the tavern he had no bag. The search warrant authorized Lieutenant Byrne to enter the premises at 1135 North Monroe Street, a two-story brick dwelling, occupied on the first floor as the Monroe Cafe, and to search the pockets of the two men described in the search warrant, and to search the premises for lottery paraphernalia and to bring any lottery paraphernalia and all persons found in the premises actively engaged in the lottery, or who

might have lottery paraphernalia in their possession before some Police Justice of Baltimore City.

The appellant specifically contends that the fact that Stanton was seen only once on the second floor, looking out the window, was not sufficient probable cause for the search of the second floor. From the affidavit presented to the judge there was no knowledge on the part of the officers that this two-story brick dwelling was not occupied by the same persons as one premises. Stanton was seen to enter the first floor and very soon afterwards at a window on the second floor. This was enough to show connection between the two.

In the case of *Bratburd v. State,* 193 Md. 352, it was said at page 356, 66 A. 2d 792, at page 794: "In support of his contention that there was no probable cause shown for the issuance of the search warrant, defendant relies on *Wood v. State,* 185 Md. 280, 44 A. 2d 859. In that case we said: 'Probable cause is more than suspicion or possibility but less than certainty or proof. On the facts this case is near the border. The question of probable cause must be determined by the judge, not by the applicant for the search warrant. * * * But in making this determination, the experience and special knowledge of the police officers who are applicants are among the facts which may be considered.' 185 Md. at page 286, 44 A. 2d at page 861." Probable cause must be determined by the judge who issues the search warrant. Article 27, Section 328, 1951 Code. Facts relied on to show probable cause are sufficient if they are such as to justify a prudent and cautious man in believing that the offense has been committed. *Lucich v. State,* 194 Md. 511, 514, 71 A. 2d 432, 434; *Smith v. State,* 191 Md. 329, 338, 62 A. 2d 287, 5 A. L. R. 2d 386, and cases there cited. The instant case is hardly a borderline case. It is well known that in the "numbers" game "runners" are necessary. The actions of the so-called Stanton were certainly similar to those of such a "runner". The passage to Stanton of "yellow looking slips" and his immediate return to the tavern which appeared

to be headquarters, together with all the other circumstances alleged in the search warrant, we think showed probable cause, more than suspicion or possibility, that lottery operations were being carried on in this two-story building.

The appellant further contends that this search warrant is general because it calls for the search of two entirely separate and distinct premises, neither having any connection with the other and as to each of which there should have been a separate warrant. When the officers entered the tavern on the first floor with the search warrant they found that the only way to get to the second floor was through an entrance on Winchester Street and then up a flight of steps into the apartment from the rear. From the application for the search warrant and from the search warrant itself, there is nothing here to show that at the time the officers applied for the search warrant they knew or had reason to believe there was a separate entrance to the second floor or that the two floors were occupied by different persons. In fact, the presence of Stanton at the second story window shortly after he entered the first floor would lead to the opposite conclusion.

Appellant's argument seems to be completely answered by the following quotation from the case of *Allen v. State,* 178 Md. 269, where Judge Parke said, at pages 276 and 277, 13 A. 2d 352, at page 356: "The first floor of 1308 East Monument Street was occupied as a place to rent and repair bicycles, and the two upper floors were later found to be occupied by negroes, while a Chinese restaurant was conducted on the first floor of 1310 East Monument Street. It afterwards developed that the proprietor of the restaurant and renters were in possession of the first floor, the attic rooms, and the front half of the second story. The traversers, it turned out, lived in the back portion of the second story of House No. 1310 East Monument Street, and the illegal betting was carried on by the convicted traversers in their second story back room in No. 1310. *It does not appear that the officers*

*knew or had reason to believe that the two buildings were physically separate and that the upper stories were occupied by different tenants.* The warrant was for the premises to be searched, and not the person. There is nothing in the record to indicate that the officers had any cause to believe that certain rooms of the premises, rather than both buildings, were being used for unlawful gambling. *The situation must be determined as it was observed at the time of the application,* and both buildings appeared to be used for ingress and egress by those suspected of maintaining and using a gambling establishment. Here the outward appearances of the two premises reasonably supported the belief that both premises were being used for an unlawful purpose, and there was no necessity for a search warrant for each building." (Emphasis supplied here).

Furthermore, if there had been probable cause to believe each of the floors were separately occupied, but were used together for a lottery operation as evidenced by the appearance of Stanton at the second floor window, the search warrant could validly have directed a search of both floors and premises. *Asner v. State,* 193 Md. 68, 65 A. 2d 881, is a case in which a search warrant was issued for the search of an automobile and all persons in or around the automobile and also for a search of the Crown Filling Station and the arrest of the operator thereof. It was contended there that the warrant was invalid, as being general in violation of Article 26 of the Declaration of Rights, because it directed the search of two separate and dissimilar places or things, namely, a filling station in a fixed location, and an automobile at an undesignated place. In that case it was pointed out that there was probable cause to suspect that the same misdemeanor was being committed by persons driving the automobile and by the person operating the filling station acting together, and not that there were two separate crimes, one being committed by one person at one place and another by another person at another place. After citing *Allen v. State,*

*supra,* and other authorities, the Court there concluded that under the facts set out in the affidavit of the police officer and in the body of the warrant itself, the search warrant was not a general warrant prohibited by the Declaration of Rights. See also *Bland v. State,* 197 Md. 546, 551-553, 80 A. 2d 43, 46, where it was held that a search warrant which authorized the search of two separate apartments and an automobile was not a general warrant. Of course if the officers had desired to search only the first floor, occupied as a tavern, no search warrant would have been necessary. Article 2B, Section 179, 1951 Code. Finding no error the judgment will be affirmed.

*Judgment affirmed, with costs.*