SOL GOODMAN ET AL. *v.* STATE OF MARYLAND
LOTTIE GOODMAN *v.* SAME

[Nos. 38, 39, January Term, 1940.]

2

*Decided March 5th, 1940.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Robert R. Carman* and *David J. Markoff*, for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General*, and *Stewart Lee Smith, Assistant State's Attorney for Baltimore City*, with whom were *William C. Walsh, Attorney General*, and *J. Bernard Wells, State's Attorney*, on the brief, for the State.

SLOAN, J., delivered the opinion of the Court.

Sol Goodman was indicted on charges of betting, wagering, and gambling unlawfully on the result of a trotting, pacing and running race; of unlawfully selling racing books and pools; establishing, keeping and occupying a certain house, building, etc., for the purpose of unlawfully betting and taking bets on races. The indictment contains fifteen counts charging practically the same offense in a variety of forms and charges. There was no question of the validity of the indictment, so that there is no need to enter into its details. The verdict was guilty, and from the judgment thereon, the defendant appeals.

A similar indictment was returned against Lottie Goodman, wife of Sol Goodman, with the same result. Both appeals are in the same record, and argued as one case.

4

At the trials of both defendants it was stipulated that "the only questions to be raised are those concerning the validity of the search and seizure made thereunder."

Preceding the arrest of the defendant and the raid of the premises by the police officers, Sergeant Ralph M. Amrein, in accordance with the provisions of the Act of 1939, ch. 749 (Code, art. 27, sec. 259A), applied to Judge Emory H. Niles for a search warrant to enter the premises, No. 1230 W. North Avenue in Baltimore City, and search for and seize certain racing paraphernalia described in his affidavit, and thereupon a search warrant was issued by Judge Niles.

The affidavit which was the basis of Judge Niles' action was as follows:

"State of Maryland, City of Baltimore,

"I, Sergeant Ralph Amrein, this day of July 29th, 1939, made oath in due form of law, that I have observed premises 1230 W. North Avenue, a confectionery store, and second and third floors, same being occupied by, Julie Markoff, and Sol Goodman, and inspecting the front and rear of said premises, I have reasonable and probable cause to believe that a misdemeanor or a felony is being committed on said premises, and that the same are used for what is known as a (Bull Pen) where bets are accepted on horse races.

"On July 26th, 1939 (Officer Joseph Burke) observed the front of these premises, and during the hours of 1:00 P. M. and 2:05 P. M., the officer noticed fifty-one (51) persons enter the store. I have observed these premises both from the outside, and from the inside of this store, when I would rush into the store there usually would be two (2) watchmen standing in front of the store, they would run into the store and notify the clerk that I was coming. Officer Allen Clark, has stood in the store in the past week, and seen people come in and they would ask the clerk whether or not they could go upstairs. Behind the counter there is a button which rings a buzzer on the second or third floor. I have seen this procedure repeated on a number of occasions, and I have

reasons to believe that the two (2) men who station themselves in front of the store are watchers for the book-making establishment.

"Affiant is a Sergeant of Police in the Police Department of Baltimore City, and has reasonable gounds for the belief that book-making is being carried on in said premises.

"Wherefore under Chapter 749, of the Acts of the General Assembly of Maryland 1939 he hereby makes application for a search and seizure warrant, authorizing him to enter the said premises and search and seize, and to take into custody, run-down sheets, racing slips, telephones, earphones, black-board teleflash, and anything pertaining to the evidence of race horse parapharnalia which is used in the operation of gambling on races, etc., that may be found on said premises."

The warrant issued in pursuance of the affidavit was as follows:

"Search Warrant

"City of Baltimore, Sct:

"The State of Maryland to Sergeant Ralph Amrein of the City of Baltimore, Greeting:

"Whereas it appears to me, the subscriber, an Associate Judge of the Supreme Bench of Baltimore City, in and for the City aforesaid, by the written information and oath of Sergeant Ralph Amrein, of the City aforesaid, that said affiant has reasonable cause to believe, and does believe, that the law in relation to betting on horse races Section 247, Article 27, is being violated in premises known as 1230 W. North Avenue, Baltimore, Maryland, used, kept, rented or occupied by one Julie Markoff and Sol Goodman and that affiant has probable cause to suspect that books, slips, telephones and other material having to do with betting on horse races prohibited by Section 247, Article 27, are concealed in said premises known as 1230 W. North Avenue, in said City. You are, therefore, hereby commanded, with necessary and proper assistance, to enter, in the day time, into the said premises used, kept, rented or occupied by the said Julie Mark-

6

off and Sol Goodman, in the City aforesaid and there diligently to search for books, slips and paraphernalia, and other material having to do with betting on horse races prohibited by law; and if the same, or any part thereof shall be found upon such search, that you bring said books, slips and paraphernalia of the above description so found and also the body of the said Julie Markoff, and Sol Goodman, to me, the subscriber, or some Police Justice of the said State, in and for the City aforesaid, to be disposed of and dealt with according to law.

"Hereof fail not at your peril, and have you then and there this warrant.

"Given under my hand and seal this 28th day of July, in the year of our Lord one thousand nine hundred and thirty-nine.

"(Signed) Emory H. Niles,
"Associate Judge of the Supreme Bench"

An indictment followed, and thereupon Sol Goodman filed a petition alleging that the search warrant was void because:

"(A) The affidavit and sworn statement of one Sergeant Ralph Amrein, upon which the said search warrant was issued, contains no statement forming a sufficient basis for the issuance of said search warrant, and that there are no facts stated in said affidavit or in said sworn statement which show any probable cause for issuance of said warrant,

"(b) That said search warrant is void in that it does not allege or recite that the Judge of the Supreme Bench issuing the same, found that there was probable cause for issuance of said warrant,

"(c) That said search warrant is void because it appears upon the face of the warrant, that although the premises to be searched and the name of the applicant are set forth therein, the grounds for such search and seizure are not set forth with the particularity as is required by statute,

"(d) And for such other and further reasons as may be shown upon a hearing of the petition,"

and prayed that the search warrant be quashed, and all papers, books, etc., seized by the officers be returned to him.

A preliminary hearing was had on the motion to quash, before Judge O'Dunne, and the motion overruled. At this hearing the search warrant was offered in evidence, and with it a carbon copy of the affidavit, which was signed by "Sergeant Ralph Amrein," but the jurat to which was blank. Sergeant Amrein testified that when he served the warrant, "That affidavit accompanied the search warrant when I presented it to Sitnick (a clerk in the store). Q. When you presented it to whom? A. Milton Sitnick, and also to Mr. Goodman upstairs. In fact I read it to him and he read it too."

It was agreed "that the affidavit was not pinned to or otherwise physically attached to the warrant when the latter was served."

The appellant vigorously argued that the affidavit offered in evidence was objectionable, because the jurat was not signed by a judge or magistrate. This contention must be ignored because, according to the record, it was not objected to, was not raised below, and cannot, therefore, be considered on appeal. Code, Art. 5, sec. 10.

The defendant argues that the search warrant should contain the grounds for search, and that it does not meet the requirements of the Act of 1939 unless the affidavit is physically attached to the warrant as part of it. The act requires that the "search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched, the grounds for such search and the name of the applicant on whose written application as aforesaid the warrant was issued." The "grounds for such search" were not set forth in the warrant itself, and it was stipulated that the officer's affidavit was not physically attached to the warrant. As already said, the affidavit accompanied the warrant and was read to and by Goodman. There is no requirement that the affidavit be served; that would be unnecessary if its statements of fact are in-

corporated in the warrant. It would be the better practice either for the warrant to recite the facts contained in the affidavit, or to see that it is attached to it and referred to as part of it. The purpose of the service of the warrant is not only to authorize the officer to make the search, but to inform the one named and suspected, if he be on the premises, what is being done and why. In this instance the defendant cannot be heard to complain of any informalities in the warrant, as he was served with all the information the issuing judge had, and which he found to be "reasonable cause" for the warrant. There is authority that there must be literal compliance with every provision of the statute before a search warrant can be issued and executed. 24 *R. C. L.* 711; 13 *A. L. R.* 1317; *People v. Bules*, 234 Mich. 335, 207 N. W. 818; *Hampton v. State*, 148 Tenn. 155, 252 S. W. 1007; *Jackson v. State*, 153 Tenn. 431. 284 S. W. 356. On the other hand there is respectable authority for the rule that substantial compliance is all that is required. *United States v. Old Dominion Warehouse*, 10 Fed. 2nd 736; *United States v. Kaplan* D. C. 286 Fed. 963; *United States v. Nestori*, D. C. 10 Fed. 2nd 570. The authorities as to the form of warrants are not so numerous. There is no provision in the Acts of 1939, ch. 749, regarding the service, or requiring the officer to read the affidavit to the one against whom directed or one in charge of the property to be searched. "A demand is necessary prior to the breaking in of the doors only where some person is found in charge of the building to be searched." 24 *R. C. L.* 708. In this case we find that there has been substantial compliance with the statute with respect to the issuance and the service of the warrant.

If the affidavit presented to the judge or magistrate does not show "probable cause" for the issuance of the warrant, then a prosecution based on the warrant and the facts unearthed in its execution cannot supply the deficiencies antecedent to the warrant, and the prosecution fails before it is begun. *Zukowski v. State*, 167 Md.

549, 175 A. 595; *Sugarman v. State,* 173 Md. 52, 195 A. 324; *State v. Mariana,* 174 Md. 85, 197 A. 620; section 4A, article 35, Code (Supp. 1935), Acts 1929, ch. 194; *Glodowski v. State,* 196 Wis. 265, 220 N. W. 227.

There can be no dispute that, before a judge or magistrate can issue a search warrant, it must be founded on an affidavit of the applicant that shows facts and circumstances which would, to any reasonable mind, justify the belief that the execution of the warrant would result in a verdict of guilty. In *Cornelius on Search and Seizure,* (2nd Ed.), 373, it is said:

"As a general rule constitutional and statutory provisions prohibit the issuance of search warrants except upon a showing of probable cause supported by oath or affirmation, and probable cause is defined by the courts and legal writers to be such an apparent state of facts that a discreet and prudent man would be led to the belief that the accused, at the time of the application for the warrant, was in possession of property, or that the premises or place sought to be searched contained property of the character for which a search under a warrant could be lawfully made."

"The question of probable cause must be determined by the judge or magistrate before whom the complaint is filed, and not the person who files or verifies the complaint and asks for the warrant."

56 *C. J.* 1214 says: "The term 'probable cause' is exceedingly difficult to define with any degree of precision; indeed no definition of it which would justify the issuance of a search warrant can be formulated which would cover every state of facts which might arise. *Boegger v. Langenberg,* 97 Mo. 890, 11 S. W. 223. Nevertheless, the term in this connection has been defined as the existence of such facts and circumstances as would excite an honest belief in a reasonable mind, acting on all the facts and circumstances within the knowledge of the magistrate, that the charge made by the applicant is true. * * * The test of probable cause for issuance is said to be that 'if the facts and circumstances before the

officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.' (*Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 *A. L. R.* 790). Thus it is obvious that the term does not mean 'actual and positive cause,' nor does it import absolute certainty, for the determination of the existence of probable cause is not concerned with the question of whether or not the offense charged has been committed (*Comm. v. Hunsinger*, 89 Pa. Super. 238, 241) but only whether or not affiant has reasonable gounds so to believe." *Dumbra v. United States*, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032; 24 *R. C. L.* 707. In the warrant issued here the judge used the phrase "reasonable cause," while the statute, Act of 1939, ch. 749, requires that the affidavit of the applicant must show that there is "probable cause." The two expressions are interchangeable and synonymous. 50 *C. J.* 420.

What facts constitute probable cause seems to be incapable of definition, and little help comes from the decisions. *Cornelius on Search and Seizure*, p. 375 *et seq.*, collected and digested thirty-six cases in which the affidavits of the applicants were held insufficient, and twenty-nine in which they were sufficient. The only thing about which they agree is that no warrant should issue based merely on information and belief, without stating the facts and sources of information on which the belief is based, (*Ibid.* 414) and it then becomes solely a question of law for the issuing judge or magistrate. *Ibid.* 374.

The facts on which the warrant was found in this case are copied *supra*, so that it is not necessary to repeat them. Sergeant Amrein's affidavit was based on his own observations of No. 1230 W. North Avenue, and information from officers Burke and Clark, both of whom testified on the hearing of the motion to quash. They had been watching the place for a long time, and Amrein learned about the precautions against intrusion by officers. There were usually two watchmen in front of

the store, who would notify the clerk (Sitnick) when he was coming; behind the counter was a buzzer, which sounded on the second or third floor. Officer Burke saw fifty-one people enter the store three days before in an hour and five minutes. Officer Clark observed the place for a week, about fifteen minutes at a time, some days saw eight to fourteen people, other days two or three. It is not easy to obtain evidence from customers and patrons of outlaw bookmakers. It is a business that is not done openly, but secretly and stealthily. The operators must and do take precautions to prevent detection. The information gets around to the officers on the beat. These places need lots of two dollar bets to keep going, and, while the customers are not very loquacious, there are too many of them carrying around the secret for all of them to keep it. Then the officers have to wear plain clothes, and try to get some evidence of the thing they know from gossip and rumor is going on. They saw people in large numbers for a confectionery shop, and the precautions taken against discovery. When facts such as are stated in the affidavit are presented to a judge, he cannot be expected to denude himself of the meaning of matters of such common knowledge. Outlaw bookmaking has become so common that enforcement officers are almost at their wits end to suppress it, in view of the difficulty under the law to obtain evidence and produce it in court. Apart from Sergeant Amrein's statement of belief, the facts which he relates could only apply to a "speak-easy" bookmaking establishment, or gambling den. In our opinion it shows probable cause for the warrant.

The preliminary question as to the propriety of the issuance of the warrant is answered by a reading of the second and concluding sentence of the Act of 1939, ch. 749, sec. 259A.

For the reasons stated, we are of the opinion that the judgments appealed from should be affirmed.

*Judgments affirmed, with costs.*