JOSEPH MAZER *v.* STATE OF MARYLAND
ANITA MINIKIN *v.* SAME

[Nos. 9, 10, January Term, 1941.]

*Decided February 20th, 1941.*

The causes were argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*E. Milton Altfeld,* with whom was. *Harry O. Levin* on the brief, for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *Douglas N. Sharretts, Assistant State's Attorney,* on the brief, for the State.

MITCHELL, J., delivered the opinion of the Court.

The appellants, Joseph Mazer and Anita Minikin, in conjunction with Herbert Thornton were jointly indicted for having unlawfully wagered bets on horse races; sold books and pools on horse races, and occupied, rented and kept certain premises for the purposes of betting and gambling.

The indictment contains fifteen counts, charging in varying forms the indicated offenses, as being in violation of the appropriate sections of article 27 of the Code (Flack's Ed. 1939), title, "Crimes and Punishments," sub-title "Gaming."

The validity of the indictment is not questioned and discussion as to its several counts is, therefore, unnecessary. Upon a plea of not guilty, by all three of the traversers, the case was submitted to the court; the verdicts as to Joseph Mazer and Anita Minikin being guilty. From the judgments entered upon said verdicts, these appeals, both of which are contained in one record, were taken.

It is stipulated and agreed between counsel for the State and for the traversers, that at the trial of the cases involved in the appeals, the property, paraphernalia and equipment seized under the search warrant in the cases were used in evidence against both of said defendants, over objection duly made and exception taken to the court's ruling by their counsel. But that such evidence was, by agreement, omitted from the bills of exception for the reason that the only questions to be raised on this appeal are those concerning the validity of the search warrant and the validity of the search and seizure made thereunder. Accordingly, our inquiry relates specifically to the question submitted by the above stipulation.

Chapter 749 of the Acts of 1939 (Code, art. 27, sec. 306), provides as follows: "Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City, * * * by a writing signed and sworn to by the applicant, that there is probable cause, the basis of which shall be set forth in said writing, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge * * *, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such build-

ing, apartment, premises, place or thing, then such judge
* * * may forthwith issue a search warrant directed to
any duly constituted policeman, constable or police officer
authorizing him to search such suspected individual,
building, apartment, premises, place or thing, and to
seize any property found liable to seizure under the
criminal laws of this State, provided that any such search
warrant shall name or describe, with reasonable partic-
ularity, the individual, building, apartment, premise,
place or thing to be searched, the grounds for such search
and the name of the applicant on whose written appli-
cation as aforesaid the warrant was issued. If, at any
time, on application to a Judge * * * of the Criminal
Court of Baltimore City, it appears that the property
taken is not the same as that described in the warrant
or that there is no probable cause for believing the
existence of the grounds on which the warrant was issued,
said judge must cause it to be restored to the person
from whom it was taken; but if it appears that the prop-
erty taken is the same as that described in the warrant
and that there is probable cause for believing the exist-
ence of the grounds on which the warrant was issued,
then said judge shall order the same retained in the
custody of the person seizing it or to be otherwise dis-
posed of according to law."

And the record shows that prior to the arrest of the
defendants and the search of the premises by the police
officers, Sergeant Boyle, in accordance with the provi-
sions of the above act, applied to Judge W. Conwell
Smith, of the Supreme Bench of Baltimore City, for a
search warrant authorizing him to enter the premises
known as No. 15 North Howard Street, in said City, and
seize and take into custody race bets, race bet slips, and
any other paraphernalia used in accepting bets on races
found on said premises; the verified application for the
warrant being as follows:

"Police Department
"City of Baltimore
"Report
"Western District, Aug. 8, 1940.
"State of Maryland, City of Baltimore:

"I, Sergeant James Boyle, this 8th day of August, 1940, make oath in due form of law that acting on a complaint that bets on races are being accepted at 15 N. Howard St., occupied on first floor as a barber shop by one Joe Mazer, who also occupies basement of said premises, I detailed Patrolman George Dietrich in plainclothes who reported to me he (Officer Dietrich) entered this barber shop at various times between 12:30 P. M. and 1:45 P. M. on July 24, 1940, July 26, 1940, July 30, 1940, Aug. 1, 1940, Aug. 3, 1940 and Aug. 6, 1940. On July 24, 1940, he remained long enough to obtain a haircut, on other days he got a shave or a shoe shine. During these times, he observed from six to ten men enter this shop on each of these visits, who would receive no barber or other such service, but would proceed to the room in back of the barber shop, whereupon Joe Mazer, or Herbert, the colored bootblack, or Carmelita the manicurist, would follow the man, even leaving a customer on whom they were working, close and lock this door, remain from three to five minutes and come out; the men would usually be folding a newspaper coming out; sometimes other men would come in, go through the shop to the locked door, rap and were admitted and after remaining from three to five minutes, went out the front door; in this rear room on first floor was a telephone. On July 26th, 1940, while Officer Dietrich was there, the telephone rang several times and the call was taken each time by Joe Mazer; on this date six men went into the rear room with Joe Mazer, who shortly after came out, leaving the six men in there, and they were still there when Officer Dietrich left the shop.

"This affiant is a Sergeant in the Police Dept. of Baltimore City and has reasonable grounds for the belief that bets on races are being carried on upon said premises, 15 N. Howard St.

298

"Wherefore, under Chapter 749 of the Acts of the General Assembly of Maryland, 1939, this affiant hereby makes application for a search and seizure warrant, authorizing him to enter said premises and seize and take into custody race bets, race bet slips, and any other paraphernalia as may be used in accepting bets on races, which may be on said premises.

(Signed) "Sergt. James Boyle.

———"Sworn and subscribed to before me this 8th day of August, 1940.

(Signed) "W. Conwell Smith,

"Associate Judge, Supreme Bench of Baltimore City."

The warrant issued in pursuance of the above application was as follows:

"Search and Seizure Warrant

"City of Baltimore, Sct.

"The State of Maryland to Sergeant James Boyle of the City of Baltimore, Greeting:

"Whereas it appears to me, the subscriber, Associate Judge of the Supreme Bench of Baltimore City aforesaid, by the written information which has been signed and sworn to by Sergeant James Boyle of the City aforesaid, that said affiant has probable cause to believe that the law prohibiting Bets on Races as defined by Article 27, Section 247, Code of 1927, is being violated by Joe Mazer, 15 N. Howard St. The basis for conclusions as to probable cause is specified in that Sergt. James Boyle states that acting on a complaint that bets on races are being accepted at 15 N. Howard St., occupied on first floor as a barber shop by one Joe Mazer, who also occupies basement of said premises, he detailed Patrolman George Dietrich in Plain clothes who reported to him he (Officer Dietrich) entered this barber shop at various times between 12:30 P. M. and 1:45 P. M. on July 25, 1940, July 26, 1940, July 30, 1940, Aug. 1, 1940, Aug. 3, 1940, and Aug. 6, 1940. On July 24, 1940 he remained long enough to obtain a haircut, on other days he got a shave or a shoeshine. During these times, he observed from six to ten men enter this shop on each of these visits,

who would receive no barber or other such service, but would proceed to the room in back of the barber shop, whereupon Joe Mazer, or Herbert, the colored bootblack, or Carmelita the manicurist, would follow the men, even leaving a customer on whom they were working, close and lock the door, remain from three to five minutes and come out; the men would usually be folding a newspaper coming out, sometimes other men would come in, go through the shop to the locked door, rap and were admitted and after remaining from three to five minutes, went out the front door; in this rear room on first floor was a telephone. On July 26, 1940, while Officer Dietrich was there, the telephone rang several times and the call was taken each time by Joe Mazer; on this date, six men went into the rear room with Joe Mazer who shortly after came out, leaving the six men in there and they were still there when Officer Dietrich left the shop. The reasons and probable cause, as above set forth, are grounds for requesting the issuance of this warrant, as prescribed by the provisions of Chapter 749, Acts of the General Assembly of 1939. You are, therefore, hereby commanded with necessary and proper assistance, to enter into the said premises at 15 N. Howard Street, and there diligently search for race bet slips and any other paraphernalia used in the unlawful operation of accepting bets on races which may be on the premises; and if the same or any part thereof shall be found upon search that you bring the said race bets, race bet slips, etc. of the above description so found and also the body of the said Joe Mazer to me, the subscriber, Associate Judge of the Supreme Bench, in and for the City aforesaid, to be disposed and dealt with according to law.

"Hereof fail not at your peril, and have you then and there this warrant.

"Given under my hand and seal this 8th day of August in the year of our Lord one thousand nine hundred and forty.

(Signed) "W. Conwell Smith,
"Associate Judge, Supreme Bench of Baltimore City."

Following the indictment and before the trial the defendant Joseph Mazer, filed a petition alleging that the search warrant was issued unlawfully and was void and of no effect, because: (a) "The affidavit and sworn statement of one Sergeant James Boyle, upon which the warrant was issued, contains no statements forming a sufficient basis for the issuance of said search warrant, and that there are no facts stated in said affidavit or in said sworn statement which would show cause for issuance of said warrant."

(b) "And for such other and further reasons as may be shown upon a hearing of the petition."

The petition prayed that the warrant be quashed; that all property seized by the officers under the alleged authority thereof be returned to the petitioner, and was overruled.

As to the defendant Anita Minikin, no motion to quash the search warrant was filed.

As has been indicated, counsel for the appellants have abandoned the question of probable cause upon which the search warrant was based. And in view of the recent decisions of this court in the cases of *Goodman v. State,* 178 Md. 1, 11 A. 2nd 635; *Allen v. State,* 178 Md. 269, 13 A. 2nd 352, and *Frankel v. State,* 178 Md. 553, 16 A. 2nd 93; they concede that any other course would prove fruitless. What they do urge, however, is that the form of the search warrant in the instant case is fatally defective in that (a), it does not conform to the direct requirements of the statute under which it was issued, and, therefore, the search and seizure made under such alleged authority was illegal and void; and (b), that the admission of property seized by virtue of the warrant, as evidence against both of the appellants, over their objection and to which they duly excepted, was erroneous.

In support of the above contention it is submitted that the warrant heretofore quoted is defective because of the recital: "Whereas it appears to me, the subscriber, Associate Judge of the Supreme Bench of Baltimore City * * * that said affiant has probable cause to believe" * * *,

while the express language of the statute provides that: "Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City * * * that there is probable cause" * * *.

In *Goodman v. State, supra,* [178 Md. 1, 11 A. 2nd 638], practically the same recital is found in the instant warrant, was made in the search warrant then under the consideration of this court, and it also appears in that case, upon indictment and before trial, a petition was filed by the defendant alleging, *inter alia,* that the search warrant was void because it did not allege or recite that the Judge of the Supreme Bench issuing the warrant "found that there was probable cause for issuance of said search warrant."

It does not appear that the question now under consideration was decided by this court on appeal in that case. However, it is significant that in the opinion in the case it was observed that: "The question of probable cause must be determined by the judge or magistrate before whom the complaint is filed, and not the person who files or verifies the complaint and asks for the warrant." Furthermore, that in the case of *Allen v. State, supra,* [178 Md. 269, 13 A. 2nd 357], in which the search and seizure warrant was issued in compliance with the provisions of chapter 749 of the Acts of 1939, this court, after considering the question of probable cause raised by the application for the warrant, said:

"It is upon this report of the officer, who had personal knowledge, that his superior officer made the information and oath upon which the judge rightly found the facts sufficient to constitute probable cause for the writ to issue."

In view of the above expressions of this court, there can be no doubt as to the construction of the Act, and that construction seems to have been placed upon it by the learned trial judge, who, nevertheless, sustained the warrant because of the sentence contained therein that: "The reasons and probable cause, as above set forth, are grounds for requesting the issuance of this warrant, as

prescribed by the provisions of chapter 749, Acts of the General Assembly of 1939."

Suffice to say, our conclusion is that the quoted sentence does not cure the obvious defect in the warrant, to which reference has been made.

We are of the opinion, therefore, that the action of the court in overruling the motion to quash the warrant and in admitting in evidence, as against both of the defendants, the property, paraphernalia and equipment seized by the officers in the course of their search under the authority of an illegal search warrant, without their respective consent, over objection duly made, was erroneous; and exceptions to these several rulings having been duly taken, we so decide.

We are not unmindful of the fact that the question as to the admissibility of evidence secured under and by virtue of what is conceded to be an illegal search warrant, has given rise to much conflict of opinion between the appellate courts of many of the States of this Country. And that in *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190, after a careful review of the authorities, affirming the decision in *Lawrence v. State,* 103 Md. 17, 63 A. 96; the conclusion adherred to was that whenever evidence offered in a criminal trial is otherwise admissible, it should not be rejected in the courts of this state because of the manner of its obtention.

However, since that decision, by the passage of chapter 194 of the Acts of 1929, now codified as section 5 of Article 35 (Flack's Code 1939) : "No evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State; nor shall any evidence in such cases be admissible if procured by, through or in consequence of a search and seizure, the effect of the admission of which would be to compel one to give evidence against himself in a criminal case." The validity of section 5 of article 35 is not questioned in the instant case, and for the

purposes of these appeals must be assumed. 11 *Amer. Jur., Constitutional Law,* sec. 125; 59 *C. J.* 621. And in view of that legislation, therefore, the cases of *Meisinger v. State* and *Lawrence v. State, supra,* are no longer controlling upon the question here involved.

Officers of the law are entitled to the full support of the courts in their endeavors to bring to justice those who transcend the law. In periods of world wide discord, crime gains its greatest impetus, and all the more that observation becomes apparent. However, regardless of that statement, we must be bound by constitutional limitations designed to protect the citizen from unreasonable search and seizure, found in the fourth amendment to the Federal Constitution, and in article twenty-six of the Declaration of Rights of this state.

As has been seen, the Legislature of Maryland has only recently prescribed the manner in which a search and seizure warrant may be obtained. For reasons with which the courts are not concerned, it has provided in no uncertain manner, as a condition precedent to the issuance of a warrant, that the question of probable cause for its issuance shall be determined by the issuing judge (or justice of the peace), and not by the affiant; and it follows that we must give effect to the statute.

In conclusion, it is noted that as to the defendant Minikin, the appellee urges that she is precluded from now questioning the legality of the search and seizure of her property, for the reason, as the record shows, that after the state closed its case, notwithstanding she had formally objected to the introduction in evidence of the articles belonging to her which were seized by the officers during the course of the search, she took the witness stand in her own defense for the purpose of justifying her possession of said articles.

It is submitted that such action on her part was in effect a waiver of her prior objection to the indicated evidence against her.

It is apparently true that when a defendant who has been subjected to an illegal search, takes the witness stand

in her own behalf and admits the unlawful possession of contraband, the error, if any, in the admission of evidence illegally obtained is cured by such admission. *Cornelius on Search and Seizure*, 2nd Ed., par. 315. We do not, however, construe the articles seized from Miss Minikin in the instant case as of the nature and character contemplated by the term "contraband."

For the reasons stated, therefore, the judgments will be reveresed.

*Judgment in No. 9 Appeals, reversed and new trial awarded.*

*Judgment in No. 10 Appeals, reversed and new trial awarded.*