EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO ALBIZU CAMPOS, acusado y apelante.

Número 15345.
*Sometido:* 3 de junio de 1953. *Resuelto:* 28 de enero de 1955.

*F. Hernández Vargas* y *J. Hernández Vallé,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Pedro Albizu Campos fué procesado y declarado convicto en varias causas criminales seguidas en su contra por infracciones a leyes de Puerto Rico, entre ellas, las siguientes: (1) infracción al art. 12 de la Ley núm. 67 de 13 de mayo de 1934 (pág. 459), según enmendada, consistente en tener en

su poder, el 2 de noviembre de 1950, dos bombas de dinamita de manufactura doméstica, con intención de usarlas para hacer daño corporal y aterrorizar y asustar personas y hacer daño y destruir propiedad, siendo sentenciado en dicha causa a sufrir la pena de 2 años y medio de cárcel; (2) infracción al art. 11 de la referida Ley núm. 67, consistente en haber usado dinamita el 31 de octubre de 1950, con el propósito de hacer daño corporal y aterrorizar y asustar personas y para hacer daño y destruir propiedad, al lanzar varias bombas de dinamita de manufactura doméstica, luego de encender las mechas de las mismas, a varios miembros de la Policía Insular, siendo sentenciado en dicha causa a sufrir la pena de 6 años de cárcel; (3) tres infracciones a la Ley núm. 14 de 8 de julio de 1936 ( (2) pág. 129), según enmendada por la núm. 95 de 12 de mayo de 1937 (Leyes de 1936–37 pág. 240), por la posesión sin declarar, conforme a dicha ley, cada una de tres armas de fuego—dos revólveres y una pistola—siendo sentenciado por dichas tres infracciones a 9 meses de cárcel en la primera, 1 año de cárcel en la segunda y 6 meses de cárcel en la tercera.

No conforme, apeló el acusado para ante este Tribunal en cada una de dichas causas, y en el alegato en apoyo de sus recursos señala como errores del tribunal sentenciador (1) resolver que la declaración jurada en virtud de la cual se expidió la orden de allanamiento era suficiente para su expedición, siendo error también admitir en evidencia las armas de fuego ocupadas y declarar convicto al acusado de la posesión ilegal de las mismas; (2) declararle culpable de infracción al art. 12 de la Ley núm. 67 de 13 de mayo de 1934 sobre *posesión* ilegal de explosivos y (3) declararle culpable de infracción al art. 11 de la misma ley sobre *uso* ilegal de explosivos.

Funda el apelante su primer señalamiento de error, relativo a la insuficiencia de la declaración jurada, en que el agente de orden público que la prestó, Astol Calero Toledo, se refirió en la misma a hechos y circunstancias ocurridos 3 días antes, "que pudieron haber justificado un arresto o un

contraataque de momento", pero que no son suficientes para autorizar el registro porque no afirmó bajo juramento dicho agente que la situación por él descrita en la declaración pudiera repetirse; porque tampoco juró que existía causa para temer la comisión de delitos o que hubiese en la casa del acusado bombas, armas de fuego u otros artefactos de muerte. Sostiene, además, que el registro efectuado en su residencia estuvo viciado de nulidad porque no se le mostró la orden ni se le notificó, al irse a practicar el dicho registro, y porque no se le enteró en forma alguna del resultado del mismo, ni se le entregó copia del inventario, ni se le llevó ante magistrado alguno. Veamos.

La declaración jurada del agente Astol Calero, en virtud de la cual se expidió la orden de registro, fué la siguiente:

"Que el lunes día 30 de octubre de 1950, estando de servicio en la Calle Sol esquina Cruz en compañía del Detective Meléndez, pude observar que desde la casa residencia del Sr. Pedro Albizu Campos, y que a la vez es las oficinas Centrales de la Junta Nacional del Partido Nacionalista de Puerto Rico, el Sr. Pedro Albizu Campos, lanzó desde la ventana del cuarto de sesiones del Club Nacionalista una bomba de manufactura doméstica contra el carro de la Policía Insular que en ese momento trataba de estacionar el detective Meléndez; que esta bomba no explotó. Inmediatamente el Sr. Pedro Albizu Campos incendió una bomba similar a la anterior lanzándola hacia el carro de la Policía Insular, logrando destrozar la parte derecha del parabrisas del automóvil. Que esta bomba tampoco explotó. Desde la otra ventana un señor que luego identifiqué como Juan José Muñoz Matos, haciendo uso de su revólver color negro, pequeño, disparó también contra el automóvil, yendo la bala a dar contra los adoquines. Que en la misma ventana que estaba el Sr. Pedro Albizu Campos estaba Doris Torresola disparando también bombas similares a las que lanzaba el Sr. Pedro Albizu Campos; que estas bombas tampoco explotaron. El Sr. Albizu Campos contra el automóvil de la Policía lanzó una botella de las que se utilizan para envasar ron con una tira amarrada alrededor del pescuezo de la botella. Esta botella se rompió al caer al lado del automóvil de la Policía. Del interior de la residencia del Sr. Albizu

Campos, fueron lanzadas más o menos 12 bombas y dos botellas de las antes relacionadas. Además disparos de armas de fuego contra la policía.

"Que la casa residencia del señor Albizu Campos tiene la siguiente descripción: Segunda planta del edificio núm. 156 de la Calle Sol haciendo Esq. con la Calle Cruz de la ciudad de San Juan, Puerto Rico. Esta planta tiene 3 puertas que dan a la Calle Sol, dos de ellas con dos pequeños balcones y una con antepecho. Tiene también dos puertas por el lado este dando hacia la Calle Cruz ambas con antepecho. Todo el edificio es de piedra y ladrillo techado del mismo material con dos plantas y un mirador. El edificio está pintado color crema y marrón con puertas pintadas también de color marrón. La escalera que conduce al segundo piso y al mirador está situada en el lado oeste del edificio en la Calle Sol y es en forma de caracol. Ocupa la primera planta de este edificio hacia el lado norte el 'Bar La Borinqueña' propiedad del señor Saúl Sanabria y por el lado sur la pescadería 'El Tercer Frente' propiedad del señor Diego Lugo que ocupa una puerta dando a la Calle Cruz. En esta segunda planta donde queda la residencia del señor Pedro Albizu Campos está también el club del Partido Nacionalista de Puerto Rico demostrado por un rótulo grande de zinc que dice 'Partido Nacionalista de Puerto Rico, Junta Nacional' y hacia la Calle Cruz pegada a un asta está la bandera de Puerto Rico."

Para la fecha en que se expidió la orden de allanamiento y se vereficó el registro contra el apelante, la garantía del ciudadano contra registros irrazonables estaba provista en el Artículo 2 de la Ley Orgánica entonces en vigor, 48 U.S.C.A., Sec. 737, que en lo pertinente disponía: "No se violará el derecho de estar garantizado contra registros y embargos arbitrarios" y "No se expedirá mandamiento de arresto o registro sino por motivo fundado, apoyado con juramento o afirmación, y describiendo particularmente el lugar que ha de registrarse y las personas que han de ser detenidas o las cosas que deben ser embargadas". (1)

El Código de Enjuiciamiento Criminal de Puerto Rico,

(1) "Motivo fundado" equivale a "causa probable" ya que en el texto inglés se usa la frase *"probable cause"*. Véase *Figueroa* v. *Tribunal de Distrito*, 72 D.P.R. 24, 29.

bajo el epígrafe "De las Ordenes de Allanamiento", dispone la forma y manera de obtener y diligenciar tales órdenes. (²)

La determinación de causa probable es función que compete a la autoridad judicial. *Pueblo* v. *Capriles*, 58 D.P.R. 548. Dicha función no puede delegarse y la opinión, creencia o conclusiones del declarante no juegan papel alguno en dicha determinación. *State* v. *District Court*, 198 Pac. 362. En el primer párrafo de la declaración jurada del agente Calero se consignan sus apreciaciones y observaciones personales relativas a hechos que percibió por sus propios sentidos. La circunstancia de que dicha declaración se prestara el día 2 de noviembre de 1950 y los hechos expuestos en ella ocurrieran el 30 de octubre de ese mismo año, no vicia de nulidad la orden por insuficiencia de la declaración—en virtud de la cual se obtuvo—para establecer causa probable, ni era necesario que el declarante afirmara—como sostiene el apelante—que existía probabilidad de causa, o que expresara su creencia de que la situación por él expuesta habría de continuar, o de que hubiera bombas, armas de fuego u otros artefactos de muerte, para que pudiera expedirse la orden por la autoridad judicial de quien fué solicitada. De los hechos expuestos en dicha declaración surgía causa probable, pues no sólo podía inferirse

---

(²) Los arts. 503, 504, 505 y 506 del Código de Enjuiciamiento Criminal disponen:

"Artículo 503.—No se podrá librar orden de allanamiento sino en virtud de causa probable, apoyada en una declaración jurada o citando el nombre o describiendo la persona, y especialmente la prenda sustraída y el sitio que ha de ser reconocido."

"Artículo 504.—El juez de paz debe, antes de librar la orden de allanamiento, examinar bajo juramento al querellante y a los testigos que éste presentare, tomando sus deposiciones por escrito, las cuales suscribirán."

"Artículo 505.—Las deposiciones expondrán los hechos que tiendan a demostrar los fundamentos de la petición, o las causas legítimas que haya para creer que existen tales fundamentos."

"Artículo 506.—Si en vista de ellas el juez de paz quedare plenamente convencido de que hay fundamento para la petición, o causas legítimas para creer en la existencia de aquellos fundamentos, debe librar una orden de allanamiento, que firmará con el nombre de su cargo oficial y la dirigirá a un agente de orden público de su propio distrito, mandándole que proceda inmediatamente a registrar la persona o sitio que se indica, en busca de la propiedad especificada, la cual se traerá a presencia del juez de paz."

de ellos la razonable probabilidad de la existencia de tales armas o artefactos en la residencia del acusado, para utilizarlos como medios de cometer delitos—art. 502, inciso 2, Código de Enjuiciamiento Criminal—si que quedó revelada la comisión de delitos graves—art. 502, inciso 3—mediante el uso armas de fuego y bombas de dinamita, quedando convencido el juez que expidió la orden, en virtud de dicha prueba, de que en la residencia del acusado "hay armas de fuego, así como bombas y otro material explosivo", que ordenó ocupar. Artículo 506, ante, nota 2. Véase *Silver* v. *State*, 8 S.W.2d 144; 9 S.W.2d 358, 60 A.L.R. 290.

■■ Nuestra ley no prescribe período de tiempo determinado, luego de observados u ocurridos los hechos, dentro del cual deba prestarse la declaración jurada en que se funde la expedición de una orden de registro. Dicha declaración, sin embargo, debe exponer hechos tan cercanos a la fecha de su expedición([3]) que justifiquen una conclusión de causa probable en esa fecha, *Sgro* v. *United States*, 287 U. S. 206, 77 L. ed. 260. Por eso debe prestarse dentro de un período razonable después de conocidos por el deponente los hechos que se expongan en ella, siendo parte de la función judicial, al determinar si hay causa probable, el estimar, en cada caso, si los hechos expuestos son tan remotos que no hagan probable la existencia de causa para el allanamiento. Véase monografía en 162 A.L.R. 1411 y 1414 et seq. En este caso los hechos consignados por el declarante no son remotos, ya que ocurrieron sólo 3 días antes de prestarse la declaración. Por eso no podemos convenir con el apelante en su argumento de que por

---

([3]) Nuestro Código de Enjuiciamiento Criminal, en su art. 512, señala un término de 10 días dentro del cual debe diligenciarse, después de expedida, una orden de allanamiento. Ese es un indicio de que la ley considera que durante ese período subsiste el motivo o causa probable en que se fundó la orden. Véase a ese efecto *Sgro* v. *United States*, citado en el texto de esta opinión, así como al efecto de que, expirados los 10 días fijados para el diligenciamiento de una orden de allanamiento, no procede la expedición de otra orden sin una nueva determinación de causa probable basada, no en la anterior declaración, sino en hechos que tengan relación con la fecha en que se expidió la nueva orden. Véase igualmente 85 A.L.R. 108 y 74 A.L.R. 1516.

haberse prestado la declaración 3 días después de los hechos, la orden expedida en virtud de la misma está viciada de nulidad.

El apelante también sostiene que es un requisito indispensable, para darle legalidad a un registro, el que se le muestre la orden a la persona contra quien va dirigida, al irse a practicar el mismo. En ausencia de un requisito estatutario en tal sentido, el oficial encargado del diligenciamiento de una orden de allanamiento no está obligado a mostrarla como un requisito previo a su derecho a ejecutarla, *State* v. *Brown*, 114 S. E. 372. Véase 27 A.L.R. 756. Aun bajo estatutos que lo requieren afirmativamente, éste ha sido interpretado como uno directivo y no mandatorio. *Nordelli* v. *United States*, 24 F.2d 665; *Giacalone* v. *United States*, 13 F.2d 108; *United States* v. *Kaplan*, 286 Fed. 963; *Justice* v. *State*, 18 S.W.2d 657. En el caso de autos el agente de orden público a quien iba dirigida la orden no pudo "dar a conocer la autoridad de que va revestido y el objeto de su visita", art. 509, Código de Enjuiciamiento Criminal, (⁴) por la razón de que al practicarse el registro—ocho de la mañana del día 2 de noviembre de 1950—el acusado se encontraba bajo arresto, practicado de tres a cuatro de la mañana de ese mismo día, en el Cuartel General de la Policía, sin que hubiera persona otra alguna en posesión o a cargo de la propiedad.

Según la prueba, el arresto en virtud de las órdenes libradas con ese fin se verificó en las horas de la madrugada del día 2 de noviembre cuando el apelante salía del Club del Partido Nacionalista situado en su propia residencia—luego de haber lanzado los agentes del orden público varias bombas lacrimógenas hacia el interior de la misma—en la intersección de las calles Cruz y Sol, en San Juan. Se verificó allí dicho arresto

---

(⁴) Artículo 509.—"El agente de la autoridad, agente de rentas internas, o inspector de contribución sobre ingresos, dentro de las funciones de su cargo, puede descerrajar cualquier puerta o ventana interior o exterior de una casa o cualquiera parte de la casa o cosa dentro de la casa con objeto de cumplimentar la orden de registro, si al dar a conocer la autoridad de que va revestido y el objeto de su visita, le fuere negada la entrada."

y se cumplimentó éste trasladando al apelante al Cuartel General de la Policía, y se esperó desde que se efectuó el mismo a las 3:15 A. M. hasta las ocho de la mañana del mismo día debido a que el local que iba a ser registrado estaba lleno de gas de las bombas lacrimógenas y en la creencia de que podía haber aún personas armadas adentro. En todo momento el local y su entrada estuvieron bajo vigilancia estricta de la Policía. Siendo ésa la situación y no hallándose presente el acusado, por razón de su arresto previo y traslado a otro sitio, es obvio el impedimento para mostrar la orden al momento de verificarse el registro. Véase *Goodman* v. *State*, 178 Md. 1, 11A.2d 635.

■■ Tampoco vicia de nulidad el allanamiento el que no se entregara al acusado, por el oficial encargado de verificar el mismo, un recibo del material u objetos ocupados, según requiere el art. 513 del Código de Enjuiciamiento Criminal.[5] Dicho requisito es directivo y su ausencia no es fatal. *United States* v. *Kaplan*, supra; Cf. *Pueblo* v. *Tonje*, 71 D.P.R. 317. De otro lado, el inventario que requiere el art. 515,[6] —cuyas disposiciones son puramente ministeriales, *Pueblo* v. *Rodríguez*, 73 D.P.R. 323—fué hecho y jurado el propio día 2 de noviembre, por el referido oficial, ante el juez que expidió la orden, al serle ésta devuelta diligenciada. No estando en

---

[5] Artículo 513.—"Cuando un agente de la autoridad, agente de rentas internas, o inspector de contribución sobre ingresos dentro de las funciones de su cargo se incautare de alguna prenda, en virtud de una orden de registro o allanamiento, deberá dar el correspondiente recibo (especificando aquélla detalladamente) a la persona a quien la quitara o en cuyo poder se hallaba y, en ausencia de ésta dejará el recibo en el lugar donde halló la prenda."

[6] Artículo 515.—"El agente de la autoridad, . . . debe en el acto devolver la orden de registro o de allanamiento al juez de paz, entregándole un inventario de las prendas incautadas, el cual inventario se hará públicamente, o en presencia de la persona a quien se incautara la prenda y de la que solicitara la orden de allanamiento, si éstas estuvieren presentes. Dicho inventario contendrá una certificación al pie, consistente en la declaración jurada del agente de la autoridad, . . . dada en presencia del juez de paz en el mismo instante y estará redactada: 'Yo . . . (agente de la autoridad, . . . por quien fué ejecutada esta orden de allanamiento), juro que el inventario que procede contiene una verdadera y detallada relación de todas las prendas por mí incautadas en cumplimiento de dicha orden'."

dicho acto presente el acusado, él pudo requerir conforme al art. 516 (7) que se le entregara copia del mismo. *Pueblo* v. *Rodríguez*, supra.

Independientemente del resultado a que antes llegamos, creemos que el registro, aun cuando se verificó entre 4 ó 5 horas después del arresto del apelante—bajo las circunstancias anteriormente indicadas—puede considerarse como un registro incidental a un arresto válido, el cual registro tenían derecho a llevar a cabo los agentes de orden público en busca de los frutos de delitos cometidos en su presencia, o de los medios por los cuales se cometieron. *Pueblo* v. *Ríos*, 71 D.P.R. 969; *People* v. *Chiagles*, 142 N. E. 583. La prueba demostró una actitud de beligerancia y agresividad continuas de parte del acusado y otros miembros del Partido Nacionalista que con él se encontraban en su residencia—y club de dicha organización—por medio de ataques con bombas y armas de fuego, no sólo el día 30 de octubre, si que porsteriormente, teniendo que recurrir la Policía al uso de bombas lacrimógenas para lograr su arresto y el de sus acompañantes. El hecho de que tales ataques a los agentes del orden público pudiera haber "justificado un arresto o un contraataque de momento"—según afirma el apelante—y que esto no se hiciera, en evitación de pérdidas de vidas y en protección de la del propio apelante, no significa que el arresto no pudiera verificarse—dada la situación de peligrosidad apuntada—tan pronto como ésta pareció haber desaparecido. En consecuencia, tanto como resultado de un registro en virtud de una orden de allanamiento, como de uno incidental a un arresto válido—para el cual además se libraron órdenes apropiadas—la ocupación de las bombas, armas y otros objetos de los que se incautaron los agentes, fué legal y no cometió error el tribunal a quo al admitirlos en evidencia.

Sostiene el apelante, al argumentar su segundo señalamiento de error, que como él fué procesado y convicto

---

(7) Artículo 516.—"El juez de paz debe entonces, si fuere requerido, entregar copia del inventario a la persona a quien se incautaron las prendas y a las que solicitara la orden de registro o allanamiento."

de una infracción al art. 11 de la Ley núm. 67, supra, (8) relativo al *uso* de explosivos, no podía ser procesado y condenado por una infracción al art. 12 de dicha Ley, (9) relativo a la *posesión* de éstos, ya que los elementos del delito previsto por el art. 12 están presentes en, y se confunden con, el delito previsto por el art. 11.

El apelante parte de una premisa equivocada. Aquí se trata de dos delitos separados y distintos, y cada uno dentro de su propia esfera criminosa, que quedan consumados en diferentes momentos. (10) Los hechos por los cuales se le acusó por infracción al art. 11—uso de dinamita—ocurrieron el día 31 de octubre de 1950, según se le imputó en la acusación y quedó establecido por la prueba, al lanzarle varias bombas de dinamita de manufactura doméstica, en la indicada fecha, a varios miembros del cuerpo de la Policía; mientras que la infracción al art. 12—posesión de dinamita—según se le imputó en la acusación y quedó establecido por la prueba, tuvo lugar el día 2 de noviembre de 1950, al encontrarse en su casa residencia otras bombas de dinamita de las que no había hecho

---

(8) Dicho artículo dispone:

"Toda persona que use dinamita u otro explosivo ilegalmente con el propósito de hacer daño corporal, o de aterrorizar o asustar a cualquier persona, o para hacer daño o destruir cualquier propiedad, o para hacer daño a la misma en cualquier forma, podrá ser castigada, convicta que fuere, a pagar una multa de no menos de doscientos cincuenta (250) dólares, ni de más de cinco mil (5,000) dólares; o a sufrir cárcel con trabajos forzados por un término que no sea menos de un año ni que exceda de veinte años."

(9) Dicho artículo dispone:

"Cualquier persona que tenga en su poder dinamita u otro explosivo químico o sustancia con la intención de usarlo para hacer daño corporal, de aterrorizar o asustar a cualquier persona, o de hacer daño o destruir cualquier propiedad, o de hacer daño a la misma en cualquier forma, podrá ser castigada, convicta que fuere, a pagar una multa de no menos de ciento cincuenta (150) dólares ni más de tres mil (3,000) dólares, o con cárcel y trabajos forzados por un término de no menos de seis meses ni más de cinco años.

(10) La doctrina de la confusión de delitos no es aplicable cuando ambos delitos son de igual categoría, esto es, ambos felonies o ambos misdemeanors. (como aquí) aunque uno se castigue más severamente que el otro. *Gilpin v. State*, 142 Md. 464, 121 Atl. 354; *People ex rel Sammons v. Hill*, 345 Ill. 103, 177 N. E. 723.

uso. No se trata, pues, de una acusación por el *uso* y otra por la posesión de las mismas bombas. No tiene, por lo tanto, sitio de aplicación aquí la teoría en que predica su señalamiento de error el apelante, o sea la de la confusión de delitos. El argumento del apelante de que lo que castiga el art. 12 es la posesión de dinamita, no importa la cantidad ni la forma o unidades que se posean, y de que las dos bombas por las que se le acusó bajo el art. 11, al hacer uso de ellas contra la Policía, formaban parte de la dinamita poseída, y que por lo tanto tal *posesión* era un ingrediente del delito de *uso*, no puede prosperar, pues ello significaría que el uso ilegal de parte de la dinamita, en violación del art. 11, condonó la posesión ilegal del resto de la dinamita que no se usó y que se continuó poseyendo. Ello sería equivalente a resolver que de ahí en adelante la posesión del resto de la dinamita no es delito. Contrario a tal pretensión, el delito de posesión ilegal continúa a través de todo el tiempo que la misma se posea con la intención de causar daño. Debe desestimarse, por lo tanto, este señalamiento de error.

Igualmente el tercero. No puede prosperar su argumento de que por haber sido convicto de un delito de ataque para cometer asesinato, realizado mediante el lanzamiento de dos bombas de manufactura doméstica a la policía—hechos que, según el propio apelante manifiesta ocurrieron al mediodía del 30 de octubre de 1950—no podía tampoco acusársele por infracción al art. 11 de la citada Ley núm. 67, por el *uso* que hizo de dinamita al lanzar otras dos bombas a la policía el día 31 de dicho mes y año. No se trata de una misma transacción. Se trata de actuaciones distintas, impulsadas separadamente, y ocurridas con intervalo suficiente para que surtieran las consecuencias que se intentaron con cada una de ellas. Véase a ese respecto *Pueblo* v. *Negrón*, ante pág. 782.

*No habiendo incurrido el tribunal sentenciador en los errores apuntados por el apelante en su alegato, las sentencias serán confirmadas.*

El Juez Presidente Sr. Snyder no intervino.