# GIORDANO *v.* STATE

[No. 10, October Term, 1953.]

*Decided November 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Reuben Shiling,* with whom was *Joseph Rosenthal,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney Gen-

eral, *Anselm Sodaro,* State's Attorney for Baltimore City and *William C. Rogers, Jr.,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Salvatore Giordano from a judgment on a verdict of guilty, rendered by the trial judge sitting without a jury, on three counts of an indictment charging him with bookmaking activities on July 19, 1952.

The appellant claims that the affidavit upon which the search warrant was based did not contain facts constituting probable cause for the issuance of the search warrant and that the evidence obtained thereby was not properly admissible against him.

The facts alleged in the application for the search warrant, for the purposes of this case, substantially follow. Upon complaint that bookmaking was being conducted in the vicinity of a park bench located in Patterson Park, in Baltimore, Patrolman Edwin Taylor watched in the vicinity in an effort to obtain evidence pertaining to violations of the gambling laws. On July 15, 1952, Taylor watched in the vicinity of said park bench and remained in that vicinity from 12:15 P.M. until 1 P.M. About 12:30 P.M. the officer was lying in the grass about ten feet from said bench. A white man described "as being about 40 years of age, about 5 feet 6 inches tall, weighing about 175 pounds, wearing a sport shirt" sat on the above described bench. The officer pretended to be asleep. The described man looked around as if he were looking for someone. A few minutes later a second white man described "as being about 50 years of age, about 5 feet 5 inches tall, weighing about 145 pounds, wearing an old straw hat" walked over to the first described man and after a short conversation the first described man produced an Armstrong Scratch Sheet, which both men studied momentarily. The man secondly described said: "I like Bess Passes, for a saw-buck in the third" and handed the first described

man "a U. S. currency bank note" which the first described man accepted and kept folded in his hand. The second described man then said: "I wanted to play 642, but I guess it's too late." The first described man then said: "I can still get it in." The second described man then handed the first described man a silver coin. The second described man walked south into the park and the first described man walked past the said officer and walked south. He stuffed the scratch sheet in his rear trousers pocket and entered an automobile bearing Maryland State License 40-445 issued to Mary C. Giordano, 3932 Rexmere Road, which automobile was parked at the curb. The first described man drove east on Baltimore Street out of the officer's vision.

As a result of this application, a search warrant was issued by Judge Herman M. Moser, of the Supreme Bench of Baltimore City, authorizing the entry and search of the automobile described in the application, "also the pockets of the clothing of the said white man who is described as being about 40 years of age, about 5 feet 6 inches tall, weighing about 175 pounds, who will be identified by the said Patrolman Edwin Taylor" for gambling paraphernalia. The warrant also directed that if such gambling paraphernalia be found that it and the body of said white man so described as being "about 40 years of age, about 5 feet 6 inches tall, weighing about 175 pounds, who will be identified by the said Patrolman Edwin Taylor; and all other persons who may be found in said automobile, who may be participating in the bookmaking or lottery activities," be brought before the judge or some other justice for the City of Baltimore.

The testimony shows that on July 19, 1952, about 1:45 P.M., Lieutenant Wade Poole and Officers Edwin Taylor and Schultz went to the described location in the vicinity of Patterson Park at Patterson Park Avenue and Baltimore Street. About five minutes later appellant drove up in his automobile and walked into Patterson Park. The officers had the above described

search warrant in their possession. Lieutenant Poole and Officer Taylor followed the appellant into Patterson Park and sat on the grass and the appellant sat on the curb near his car. Another car drove up and a man blew his horn and drove around on Patterson Park Avenue and parked. At that time the appellant got up and walked toward the car and the other man walked toward him. Lieutenant Poole and Officer Taylor walked up and sat on the grass. At that time the other man, Harry Buddmeyer, gave the appellant "some white paper rolled up". The appellant put it in his right pants pocket. The officers could not hear the conversation between these two men. The appellant walked back to his car and Buddmeyer walked toward his car. Lieutenant Poole and Officer Taylor walked toward the appellant who had gotten into his car. Lieutenant Poole, before the appellant closed the car door, told him that he had "a search and seizure warrant", that he had seen the other man give him some paper which he had put in his right hand pocket. The appellant then said "Yes, Sir" and took the paper out of his pocket and handed it to Lieutenant Poole. The paper contained "horses' names and prices behind them". These horses were running at various tracks. On this paper were "forty-six bets, 77 horses, $152.00 bet." Lieutenant Poole asked the appellant where he met to get the money and the appellant said: "Well, we would settle up at night time." The appellant was searched at the station house and $662.00 in cash and one slip of paper with horses' names on it were found on his person. The Armstrong Scratch Sheet for that day "was over the top of the visor".

Appellant contends specifically that the affidavit for the search warrant did not set forth sufficient facts to show probable cause that any crime was being committed in the automobile described in the warrant and therefore that the search warrant as a whole was invalid. Article 35, Section 5, commonly known as the Bouse Act, provides that in the trial of misdemeanors no

evidence shall be admissible where it has been procured by any illegal search or seizure or any search or seizure prohibited by the Declaration of Rights of this State. Of course, since the adoption of the Bouse Act, *supra,* if the affidavit presented to the judge or magistrate does not show probable cause for the issuance thereof, the prosecution based on the warrant fails and the evidence thereby obtained is not admissible. *Goodman v. State,* 178 Md. 1, 8-9, 11 A. 2d 635, and cases there cited; *Mazer v. State,* 179 Md. 293, 302-303, 18 A. 2d 217.

Assuming, without deciding, that there was not sufficient probable cause shown in the application for the warrant to justify the instructions to search the automobile, nevertheless, as the application contained reasonable grounds for belief that the crime was being committed by a person described in the search warrant, the direction to search that person is not void as a general warrant merely because separate warrants were not issued. *Saunders v. State,* 199 Md. 568, 570-574, 87 A. 2d 618, 621. In *Saunders v. State, supra,* the warrant authorized the search of a certain building and the search of "all persons found in the premises or who may enter the premises" for lottery paraphernalia. We held that even though the warrant might be held invalid as to the search of innocent visitors, it could be sustained as to the search of the premises and all persons participating in the crime. In *Martini v. State,* 200 Md. 609, 92 A. 2d 456, the warrant directed the search of an automobile described therein in detail and the search of a person described as a white man being about 25 years of age. In that case we assumed, without deciding, that the description of a man about 25 years of age was inadequate, but that it did not make the entire warrant defective. We there concluded that the warrant could be sustained as to the search of the automobile even though we assumed that it was invalid as to "the white man, about 25 years of age". It was said in *Wilson v. State,* 200 Md. 187, at page 192, 88 A. 2d 564, at page 566: "Recently we held invalid a search

warrant which recited an application by 'Sergeant S. Ralph Warnken' because the Act of 1939 [Chapter 749, as amended by the Act of 1950, Chapter 81, Code (1951), Article 27, Sections 328 and 329] requires that a search warrant shall state 'the name of the applicant on whose written application as aforesaid the warrant was issued'. *Howard v. State,* 199 Md. 529, 531, 532, 87 A. 2d 161 162. More recently we held that general words in a search warrant, broad enough to include persons on the premises as to whom no probable cause is shown, *De-Angelo v. State,* 199 Md. 48, 85 A. 2d 468, does not invalidate the warrant *in toto,* because the statute does not so provide and the invalid general words are separable from the valid provisions which alone affected the appellant. *Saunders v. State,* 199 Md. 568, 87 A. 2d 618. Also recently we have refused to hold search warrants invalid for a variety of reasons not covered by any provision in the Act of 1939, *e.g.,* manner of service of the Warrant, *Carpenter v. State,* 200 Md. 31, 88 A. 2d 180; *Adams v. State,* 200 Md. 133, 88 A. 2d 556; failure to date the search warrant, *Bell v. State,* 200 Md. 223, 88 A. 2d 567; erroneous reference to the Act of 1950, ch. 81, *Carpenter v. State, supra; Saum v. State,* 200 Md. 85, 88 A. 2d 562."

We are of opinion that the description of the appellant as being "a white man, about 40 years of age, about 5 feet 6 inches tall, weighing about 175 pounds, who will be identified by the said Patrolman Edwin Taylor" was a description in reasonable particularity as required by Code, Article 27, Section 328, *supra.* In *Wilson v. State, supra,* the defendant was referred to as "a white man * * * described as being about five feet, nine inches in height, about 180 pounds in weight and about forty years of age, * * * whom affiant [Officer Diggins] had previously heard called Whitey, * * * who will be identified by the affiant." In that case, Article 26 of the Declaration of Rights declaring that "all general warrants to search suspected places, or to apprehend suspected persons, without naming or

describing the place, or the person in special, are illegal,"
and Article 27, Section 328, *supra*, of the Code, pro-
viding that a search warrant "shall name or describe,
with reasonable particularity, the individual, building,
apartment, premises, place or thing to be searched,"
were discussed in detail and we there held that the
description in that search warrant was sufficient to
make it valid. In the instant case Officer Edwin Taylor
testified that he accompanied Lieutenant Poole on this
occasion and that he was present at the time of ap-
pellant's arrest. He said: "We followed Giordano
down to his automobile, and when we got to the auto-
mobile where Giordano had entered the automobile
Sergeant Poole told him we had a search and seizure
warrant for him, and Giordano stood outside the auto-
mobile and I was there when Sergeant Poole said give
me the white papers that are in your right trousers
pocket that the other man handed you. At that time
Giordano reached in his right trouser pocket and took
out a roll of white papers." As Officer Edwin Taylor
was present when the appellant was told that the officers
had a search and seizure warrant for him, he was
evidently identified by Officer Taylor.

Assuming, without deciding, that the part of the search
warrant which called for the search of the automobile
was invalid, the recitations in the application for the
search warrant that the affiant overheard the appellant
receive a bet on a horse and on a number, and the sight
of money passed to him, certainly amounted to more
than suspicion or possibility that the appellant was
engaged in gambling operations and therefore the search
warrant as to him was valid. *Adams v. State*, 200 Md.
133, 139, 88 A. 2d 556, 558; *Fleming v. State*, 201 Md.
145, 149-150, 92 A. 2d 747, 749, and cases there cited.

Furthermore, the search warrant called for the arrest
of the man particularly described therein. When ap-
pellant was lawfully arrested under the search warrant
the officers were authorized to search him and seize
the incriminating articles connected with the crime,

either as its fruits or the means by which it was committed, found upon his person or within his use and immediate control and possession. *Fischer v. State,* 195 Md. 477, 481-482, 74 A. 2d 34; *Rucker v. State,* 196 Md. 334, 338-339, 76 A. 2d 572, and cases there cited; *Scarlett v. State,* 201 Md. 310, 317, 93 A. 2d 753, 756, *certiorari* denied *sub nom. Scarlett v. Maryland,* 1953, 345 U. S. 955, 73 S. Ct. 937.

As we find no error the judgment will be affirmed.

*Judgment affirmed, with costs.*